UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CRESCENT MINE, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>BUNKER HILL MINING CORPORATION; and PLACER MINING CORPORATION d/b/a NEW BUNKER HILL MINING CO.,<br><br>        Defendants. | Case No. 2:21-cv-00310-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Bunker Hill Mining Corporation's ("Bunker Hill") Motion to Dismiss (Dkt. 19), which was later joined by Defendant Placer Mining Corporation ("Placer") (Dkt. 21). Pending as well is Plaintiff Crescent Mine, LLC's ("Crescent") Motion to Dismiss Defendant Placer Mining Corporation's Counterclaim ("Motion to Dismiss Counterclaim). Dkt. 29. On January 26, 2022, the Court held oral argument and took the motions under advisement. Upon review, and for the reasons set forth below, the Court GRANTS in part and DENIES in part Bunker Hill's Motion to Dismiss and DENIES Crescent's Motion to Dismiss Counterclaim as MOOT. The Court also MOOTS the pending Motion for Leave to File Second Amended Complaint. Dkt. 47.

## II. BACKGROUND

The Bunker Hill Mine, located in northern Idaho, covers roughly 6,500 acres, with

underground workings of approximately 6,000 vertical feet and 150 miles of tunnels.[1] Placer acquired the Bunker Hill Mine property and its mineral rights sometime between December 1991 to April 1992, and is the current owner of the Bunker Hill Mine.

The Crescent Mine is located east of the Bunker Hill Mine. It is much smaller than the Bunker Hill Mine. When measured by tonnage produced, the Crescent Mine is approximately 2.4 percent the size of the Bunker Hill Mine. Although separate mines, the Crescent Mine and the Bunker Hill Mine were formerly owned by the same company, which constructed a tunnel (the "Y-U crosscut" or the "Yreka crosscut") connecting the two mines.

Mines naturally fill up with water, often through groundwater recharge, and the Crescent Mine and the Bunker Hill Mine are no exception. Prior to 1991, water was pumped from the lower levels of both mines to clear the area for mining. Notably, water in a mine often becomes highly contaminated and extremely acidic when it contacts exposed minerals. This tainted water is referred to as acid mine drainage ("AMD"). The AMD created within the Bunker Hill Mine contains several heavy metals including zinc, cadmium, lead, iron, manganese, and arsenic, at levels exceeding regulatory standards.

Prior to 1991, AMD was pumped from the lower levels of the Bunker Hill Mine and channeled to the Central Treatment Plant, where it was treated and discharged to a creek flowing into the South Fork of the Coeur d'Alene River ("South Fork"). The pumping and

---

[1] Because this is a Motion to Dismiss, all facts are from the Amended Complaint (Dkt. 24). Obviously, the facts may evolve as the adjudicative process continues and should not be considered final. Although Defendants spent considerable time claiming these facts are wrong (Dkt. 19-1, at 2), such factual disputes are inappropriate at this stage of the proceedings.

treatment were necessary to prevent Bunker Hill Mine's AMD from entering the South Fork in its untreated state, which would cause significant environmental destruction.

After assuming ownership of the Bunker Hill Mine in 1991, Placer began deliberately diverting AMD flow into the lower levels of the Bunker Hill Mine instead of conveying it to the Central Treatment Plant. This caused significant flooding of the Bunker Hill Mine's lower workings and substantially raised the water level inside the mine. The diversion of AMD to the lower levels of the Bunker Hill Mine by Placer was sufficient to eventually cause AMD to enter the Crescent Mine via the Y-U crosscut tunnel, flooding the Crescent Mine's lower levels with AMD. Interestingly, Placer moved materials into the Bunker Hill Mine to construct a plug for the Y-U crosscut to prevent AMD from flowing through it to the Crescent Mine, but then failed to install the plug. By this time, the Crescent Mine was owned by a different company than the parent company that once owned both the Bunker Hill Mine and the Crescent Mine. Placer was not authorized to divert AMD into the Crescent Mine.

In 1994, the EPA determined that Placer's intentional flooding of the Bunker Hill Mine posed an imminent and substantial risk to the environment because of the potential for the untreated AMD to be released into the South Fork. The EPA issued a unilateral administrative order directing Placer to maintain the Bunker Hill Mine water level at least 300 vertical feet below the level of the South Fork, to construct a piping system to convey AMD to the Central Treatment Plant, and then to convey all AMD from the mine to the Central Treatment Plant. Placer failed to comply with the order because it did not convey the AMD to the Central Treatment Plant and instead allowed numerous uncontrolled AMD

releases from the mine.

The EPA then directly stepped in and assumed ownership and operation of the Central Treatment Plant. The EPA sought reimbursement for its actions in running the plant. In 2004, after being stonewalled by Placer, the United States sued Placer on behalf of the EPA to recover the EPA's response costs and to secure penalties and punitive damages for Placer's actions.

In 2014, Crescent (the corporation) purchased the Crescent Mine and has owned and operated it since. In 2017, Bunker Hill (the corporation) entered into a lease agreement with Placer to operate the Bunker Hill Mine and secured an option to purchase the mine. Under the lease agreement, Bunker Hill was given full operational control and possession over the entire Bunker Hill Mine, including management and control of the mine's water.

In 2018, Bunker Hill and the EPA entered into a settlement agreement whereby Bunker Hill agreed to perform a response action and to make a series of payments to satisfy Placer's liability. This, along with a consent decree, effectively ended the 2004 lawsuit. However, the AMD released into the Crescent Mine is still there. The flooded tunnels have precluded Crescent from being able to mine approximately 9.3 million ounces of silver ore and from expanding its mine.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare*

*Sys.*, *LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121. A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id*. at 570.

The Supreme Court's focus on plausibility in *Twombly* significantly heightened the prior federal standard of fair notice. Alexander A. Reinert, *Measuring the Impact of Plausibility Pleading*, 101 Va. L. Rev. 2117, 2118–19 (2015). Because of this shift, many cases prior to 2007 can no longer be considered good law. Indeed, all decisions issued regarding motions to dismiss prior to 2007 must all be taken with several grains of salt.

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In cases decided after *Iqbal* and *Twombly*, the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v.*

*Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

## IV. BUNKER HILL AND PLACER'S MOTION TO DISMISS

Crescent brings seven causes of action against Bunker Hill and Placer: (1) cost recovery under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") § 107(a), 42 U.S.C. 9607(a)[2]; (2) declaratory judgment under CERCLA; (3) common law trespass; (4) trespass under I.C. § 6-202(2)(a)–(b); (5) common law nuisance or nuisance under I.C. § 52-101; (6) negligence; and (7) tortious interference with prospective economic advantage.[3] Defendants seek to dismiss each claim, and each will be discussed in turn.

### A. Cost Recovery under CERCLA

Congress passed CERCLA "in response to serious environmental and health risks posed by industrial pollution. The Act was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009). CERCLA § 107(a) imposes liability for releases or threatened releases of hazardous substances from a facility on (1) current owners and operators of the facility, (2) past owners and operators of the facility at the time of the

---

[2] Practitioners and attorneys often cite to specific sections in CERCLA rather than where it is codified in the U.S. Code. *See, e.g.*, Owen Smith, *The Expansive Scope of Liable Parties Under CERCLA*, 63 St. John's L. Rev., 821, 821 (1989). In the interest of accuracy, the Court will reference both citations.

[3] Bunker Hill's Motion to Dismiss (Dkt. 19) was filed prior to Crescent's Amended Complaint (Dkt. 24). Normally this would moot the Motion to Dismiss. However, the Complaint was amended, with Defendants' consent, for the sole purpose of removing R. Hopper, Jr. from the lawsuit. Dkt. 28, at 2. The change does not impact Bunker Hill's or Placer's arguments against Crescent, nor does it affect Crescent's responses. Neither party raised any issue with the amended complaint, and so the Court will not moot the Motion to Dismiss.

disposal of hazardous substances, and (3) individuals who arrange for the disposal or treatment of the hazardous substances, including (4) those who transport it. 42 U.S.C. § 9607(a). However, this release or threatened release must cause "the incurrence of response costs." *Id*. at (a)(4). For non-government entities, the response costs must also be "necessary." *Id*. Those who are liable for releases or threatened releases are required to pay for the response costs. *Id*.

Although "response cost" is an important term in CERCLA, it is undefined.[4] However, CERCLA does define "respond" and "response" as "remove, removal, remedy, and remedial action; all such terms . . . include enforcement activities related thereto." 42 U.S.C. § 9601(25).

Upon review of the terms "remove, removal, remedy, and remedial action," it is clear that they are broadly defined and include most actions that would reasonably be taken in response to an environmental emergency. "Remove" and "removal" are defined as:

> the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 9604(b) of this title, and any emergency assistance which may be provided under the Disaster Relief and Emergency Assistance Act.

---

[4] The Ninth Circuit has stated that "in the 'maze'-like structure and baffling language of CERCLA, clarity is rare." *Cal. ex. rel. Cal. Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 663 (cleaned up).

MEMORANDUM DECISION AND ORDER - 7

42 U.S.C. § 9601(23). The terms "remedy" and "remedial action" strengthen the broad nature of what is included as a response, since they are defined as:

> those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. . . . the term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.

42 U.S.C. §9601(24).

Due to the wide-ranging definitions of "remove, removal, remedy, and remedial action," the term "response" is therefore broadly defined and, in summary, includes most actions taken to remove hazardous substances or remedy the environmental degradation caused by such substances.[5] The term "response cost" accordingly includes appropriate costs incurred in such response actions.

There is no minimum amount of response costs that a party must incur to state a

---

[5] The Court does not intend to break new ground on explaining what qualifies as a response cost. This is a simplified, broad summary appropriate for the purposes of the instant Motion to Dismiss. Limitations still exist on what qualifies as a necessary response cost. *See, e.g., City of Spokane v. Monsanto Co.*, 2017 WL 2945729, at *4 (E.D. Wash. Jul. 10, 2017) ("Monsanto is correct that certain investigative costs may be recoverable under CERCLA. With respect to legal costs, the rule is much narrower than Monsanto suggests. . . .") (cleaned up).

MEMORANDUM DECISION AND ORDER - 8

claim under CERCLA § 107—even one dollar is sufficient. *Cal. ex. rel. Cal. Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 668 n.4 (9th Cir. 2004) ("As soon as the Department expended its first dollar, it could have sued Neville for this dollar and sought a declaratory judgment of Neville's liability for future response costs."). However, a complaining party must still allege how it incurred response costs. For example, in *Neville*, the State of California alleged it had incurred response costs in overseeing defendant's cleanup of his contaminated industrial facility. *Id*. at 664.

Crescent claims it has adequately alleged the response costs it expended. Crescent rests much of its legal support on its reading of *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149 (9th Cir. 1989).  It is worth noting from the outset that *Ascon* was written before *Twombly,* 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and therefore has inherent flaws that must be accounted for because *Twombly* and *Iqbal* raised the standard necessary to survive a motion to dismiss. Although *Ascon* has been cited in some cases by the Ninth Circuit after *Twombly* and *Iqbal*, *Ascon* does not lessen the standard required of a complaint to survive a motion to dismiss. According to the Ninth Circuit, CERCLA claims must survive the *Twombly* and *Iqbal* standard. *See, e.g., Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). It is misleading to suggest otherwise.[6]

---

[6] In addition to implying that *Ascon* lowered the standard for CERCLA complaints, Crescent also claims that it met the pleading standard "by putting [Bunker Hill] on notice as to Crescent's claim and its basis." Dkt. 28, at 2. Notice pleading is no longer the standard under Rule 12(b)(6), and Crescent should not claim otherwise. Additionally, while motions to dismiss *used* to be "disfavored" and only granted in "extraordinary" cases (Dkt. 28, at 2-3) this is no longer the case after *Twombly* and *Iqbal*. Although courts still exercise caution in granting them, motions to dismiss are now routinely granted in whole or in part. (Continued)

In *Ascon*, Plaintiff Ascon Properties bought property used as an active disposal site for hazardous waste created by Mobil Oil Company. 866 F.2d at 1151. The district court dismissed Ascon's CERCLA claim, ruling that Ascon had failed to state a claim upon which relief could be granted. *Id*. at 1152. The Ninth Circuit disagreed, holding "a plaintiff need not allege the particular manner in which a release or threatened release has occurred in order to make out a prima facie claim under section 107(a) of CERCLA." *Id*. at 1153. However, the Ninth Circuit then imposed "as a pleading requirement that *a claimant must allege at least one type of response cost cognizable under CERCLA* in order to make out a prima facie case." *Id*. at 1154 (emphasis added).

The Ninth Circuit then evaluated Ascon's complaint and found that Ascon had incurred cleanup costs and had "developed and submitted a remedial action plan for the property." *Id*. at 1154. Ascon also claimed that it had "been forced to incur response costs and had in fact spent substantial amounts toward the clean-up, removal, and remedial action at the [property]." *Id*. at 1156. Thus, Ascon had "alleged at least two types of response costs under CERCLA" and therefore had appropriately pleaded that element of a CERCLA claim.[7] *Id*. at 1154.

---

Crescent and its attorneys should be aware of this and be more cautious about wholeheartedly invoking old case law that is no longer relevant. Crescent and its attorneys also should not leave out relevant parts of such caselaw, including failing to include the whole *Ascon* standard regarding the need to "allege at least one type of response cost." 866 F.2d at 1154. Such omissions and misrepresentations of case law could appear duplicitous.

[7] Crescent also claims that *City of Colton v. Am. Promotional Events, Inc.-W.* supports its claim that *Ascon* survived in full despite the *Twombly* and *Iqbal* standard. 390 F. App'x 749, 751 (9th Cir. 2010). This argument is inaccurate for several reasons. First, *City of Colton* is a two-page decision by the Ninth Circuit. There is no analysis regarding the viability of *Ascon*, only two citations to it. Second, the Ninth Circuit states that the plaintiff "alleged not only all of the elements of a prima facie claim for cost recovery, *see Carson Harbor Village, Ltd. V. Unocal Corp.*, 270 F.3d 863, 870–71 (9th Cir. 2001) *but also* sufficient (Continued)

MEMORANDUM DECISION AND ORDER - 10

Bunker Hill claims that Crescent has not adequately alleged the response costs it incurred and therefore cannot meet the requirements of CERCLA § 107(a). Crescent has acknowledged that its alleged response costs are all contained in its Amended Complaint at paragraphs 55 and 56. These paragraphs state:

> 55. In the period from approximately 1991 through 1994 (and possibly later periods as well), there were "releases" and/or threatened "releases" of "hazardous substances" (including AMD and heavy metals contained in the AMD) from the Bunker Hill Mine into the Crescent Mine, causing the incurrence of "response" costs by Crescent, within the meaning of sections 101(22), 101(14), 101(25), and 107 of CERCLA, 42 U.S.C. §§ 9601(22), 9601(14), 9601(14) (sic), and 9607.

> 56. The "response" costs incurred by Crescent were reasonable, "necessary," and "consistent with the National Contingency Plan" within the meaning of section 107 of CERCLA, 42 U.S.C. § 9607.

Crescent has only alleged that it incurred "response costs." There is no further detail about what activities Crescent engaged in—such as containment or cleanup efforts—to incur such costs. Unlike the plaintiff in *Ascon*, Crescent has not pointed to any generic cleanup costs or to a proposed remedial action plan.[8] Crescent has not identified a single action it took to incur response costs as *Ascon* requires. Nor is there mention of Crescent even spending a "single dollar" as required by the Ninth Circuit. *Neville*, 358 F.3d at 668, n.4. Crescent's language is a prototypical example of a conclusory allegation. The Supreme

---

facts to provide 'general notice of the nature of the CERCLA claim,' *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1156 (9th Cir. 1989)." *Id*. at 751 (emphasis added). Notably, the Ninth Circuit first held that all the elements of the CERCLA claim were alleged. Only then did the Ninth Circuit mention that plaintiff had provided general notice of the nature of the CERCLA claim, and only then was *Ascon* referenced. The issue here is not whether Crescent has provided general notice, but whether it has alleged all the elements of a prima facie claim as well. As the Ninth Circuit indicated, general notice by itself is not sufficient.

[8] The Court is not implying that generic claims of cleanup will necessarily survive the *Twombly* and *Iqbal* standard. Such will be decided on a case-by-case basis. The Court is merely stating out that even the most generic of costs have not been alleged.

Court has held that conclusory allegations are insufficient to survive a motion to dismiss, and therefore the Court GRANTS the Motion to Dismiss as it relates to Crescent's cause of action involving CERCLA recovery costs against both Bunker Hill and Placer. Count One is therefore DISMISSED against Defendants.

### B. Declaratory Judgment under CERCLA

An action for declaratory relief under CERCLA § 113 fails in the "in the absence of a substantive cause of action." *Chevron Envtl. Mgmt. Co. v. BKK Corp.*, 880 F. Supp. 2d 1083, 1091 (E.D. Cal. 2012) (quoting *Union Station Assocs., LLC. v. Puget Sound Energy, Inc.*, 238 F. Supp. 2d 1226, 1230 (W.D. Wash. 2002)). The same rule applies to claims under the Declaratory Judgment Act, as Crescent has made here. *See City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1007 (9th Cir. 2007). Accordingly, because Crescent fails to state a claim under CERCLA § 107, Crescent does not have a substantive claim for relief upon which to base a declaratory judgment and Count Two is therefore DISMISSED against Defendants.

### C. Common Law Trespass and Trespass under I.C. § 6-202(2)(a)–(b)

Defendants contend that both trespass claims (Counts Three and Four) should be dismissed because they are time barred. Dkt. 19-1, at 10. Idaho Code § 5-218 provides that actions for trespass upon real property must be filed within three years after the claim accrued. Defendants argue that because the AMD entered the mine between 1991 to 1994, roughly thirty years ago, the statute of limitations has expired. Dkt. 19-1, at 11. Defendants also claim that Crescent made inadequate conclusory allegations to suggest this was a "continuing trespass." *Id*. at 10.

Idaho courts "recognize the continuing-tort doctrine," although the application depends on the factual context. *Beavertail, Inc. v. United States*, 2017 WL 3749446, at *10 (D. Idaho Aug. 20, 2017) (citing *Curtis v. Firth*, 850 P.2d 749, 754 (Idaho 1993)). One example of the continuing-tort doctrine is found in *Woodland v. Lyon*, 298 P.2d 380, 382 (Idaho 1956). In *Woodland*, a downstream landowner sued his upstream neighbor, alleging that the neighbor had "filed in" a streambed on his property in 1949, which prevented plaintiff from getting sufficient water during four later irrigating seasons. *Id.* Even though the single act of filing had occurred years before, the tort was held to be continuing. In so holding, the Idaho Supreme Court explained: "The tort alleged herein is not a single wrong, but a continuing one, and appellant may, if the evidence supports his claim, recover for all injuries occurring within the statutory period, even though the obstruction occurred more than four years before the complaint was filed." *Id.*  Similarly, in *Beavertail*, the Court held that even though the repeated annual flooding of the plaintiff farmers' fields was caused by the government's decision to leave partially constructed dikes in place, the flooding was a continual tort. 2017 WL 3749446, at *10.

Here, Crescent alleges that the AMD entered the mine between 1991 and 1994. However, Crescent also alleges the AMD is still in the mine. Like *Woodland* and *Beavertail*, while the cause of the flooding occurred beyond the limitations period, the aquatic trespass is still ongoing. Accordingly, Crescent has adequately alleged the timing for a continuing tort and its trespass claims against Defendants are not time barred.

Although Crescent survives the statute of limitations requirement, its trespass claims against Bunker Hill are fatally flawed because Bunker Hill is not responsible for the alleged

trespass. Both common law and statutory trespass require tortious activity by the defendant. Idaho common law trespass consists of "(1) an invasion, (2) which interferes with the right of exclusive possession of the land, and (3) which is a direct result of some act committed by the defendant." *Thomas v. Thomas*, 2015 WL 1467207, at *7 (D. Idaho Mar. 30, 2015) (cleaned up). Civil trespass occurs when "[a] person commits a civil trespass with damage when he enters or remains on the real property of another without permission, knowing or with reason to know that his presence is not permitted, and causes damage to real or personal property in excess of one thousand dollars." I.C. § 6-202(2)(b). Neither this statute nor the common law provides a lessee can inherit liability for the owner's trespass, and Crescent has not cited to any authority to support such a proposition.[9]

According to the Amended Complaint, Bunker Hill is a lessee. Dkt. 24, at ¶¶ 2, 32. While it has full operational control and an *option* to later purchase Placer, Crescent has not alleged that Bunker Hill has done so. Accordingly, Placer—not Bunker Hill—is the only party against whom Crescent can bring a claim of trespass. Crescent has not alleged that Bunker Hill initiated the trespass and has provided no legal support for its claim that lessees inherit the liability of the property owner. The Court therefore GRANTS the Motion to Dismiss in regard to Counts Three and Four and DISMISSES both trespass claims against Bunker Hill. Crescent may continue with its trespass claims against Placer.

---

[9] Crescent did point to the Second Restatement of Torts as authority for the proposition that a party purchasing an ownership interest in a trespassing item inherits a duty to cure the trespass. Dkt. 28, at 13. However, the Restatement referenced an *ownership* interest. Bunker Hill, according to Crescent's complaint, is only the "current lessee and operator" of the Bunker Hill Mine. Dkt. 24, at ¶¶ 2, 32. While Bunker Hill did enter into a settlement agreement with the EPA on behalf of Placer, Crescent has not argued that this settlement gave Bunker Hill an ownership interest in the mine.

### D. Nuisance

Crescent brought its nuisance claim (Count 5) under common law or, alternatively, under Idaho Code § 52-101. The statute of limitations for nuisance claims in Idaho is four years. I.C. § 5-224. Defendants contend that Crescent's claims are time barred because the AMD entered Crescent's mine between 1991 and 1994. However, as explained above, Crescent's claims are for continuing torts and are therefore not time barred.

Crescent's nuisance claims similarly fail against Bunker Hill because Bunker Hill did not initiate the nuisance. Crescent has only alleged that Placer was responsible for the AMD discharge. Crescent has provided no case law to support its claim that a lessee inherits the tort liabilities of the owner. Therefore, the Court GRANTS Bunker Hill's Motion to Dismiss in regard to Count 5 and DISMISSES Count 5 against Bunker Hill only. Crescent may continue with its nuisance claim against Placer.

### E. Negligence

Crescent brought a claim of common law negligence (Count 6) against Defendants. Defendants argue the negligence claim is time barred under the four-year statute of limitations in Idaho Code § 5-224. As explained above, Crescent has brought a continuing negligence claim and it is consequently timely.

Crescent's negligence claim fails against Bunker Hill for the same reason that the above claims fail—Bunker Hill was not responsible for the negligence. Crescent has only alleged that Placer was responsible for the AMD discharge and has not provided case law supporting its clam that a lessee inherits the tort liabilities of the owner. Therefore, the Court GRANTS the Motion to Dismiss in regard to Count 6 and DISMISSES Count 6

against Bunker Hill only. Crescent may continue with its negligence claim against Placer.

## F. Tortious Interference with Prospective Economic Advantage

To adequately plead a claim for tortious interference with prospective economic advantage, a plaintiff must allege "(1) the existence of a valid economic expectancy, (2) knowledge of the expectancy on the part of the interferer, (3) intentional interference inducing termination of the expectancy, (4) the interference was wrongful by some measure beyond the fact of the interference itself, and (5) resulting damage to the plaintiff whose expectancy has been disrupted." *Cantwell v. City of Boise*, 191 P.3d 205, 216 (Idaho 2008). The relevant section of Crescent's complaint states:

> 104. Crescent had the valid economic expectancy of selling the Crescent Mine during the first half of 2021 and obtaining the proceeds therefrom.

> 105. Upon information and belief, [Bunker Hill] has, and has had, knowledge of Crescent's expectancy of selling the Crescent Mine by the end of the first half of 2021.

> 106. Upon information and belief, [Bunker Hill], through its employees, contractors, and/or agents, intentionally interfered with Crescent's expectancy of selling the Crescent Mine during the first half of 2021 through sharing false and misleading allegations about the Crescent Mine with third parties for the purposes of delaying or destroying Crescent's ability to sell the Crescent Mine and/or inducing other parties to devalue the Crescent Mine, offer lower purchase prices, and/or refrain from making an offer.

> 107. Upon information and belief, [Bunker Hill's] interference caused Crescent to delay its sales activities indefinitely until such time as Crescent can investigate and correct the false and misleading assertions about the Crescent Mine that were spread by [Bunker Hill]. [Bunker Hill's] interference therefore induced the termination of Crescent's expectancy of selling the Crescent Mine during the first half of 2021.

> 108. [Bunker Hill's] interference caused damages to Crescent in the form of lost sales and profits, increased transaction and administrative costs, and other costs and expenses.

109. Based on the foregoing, [Bunker Hill] is liable to Crescent for tortious interference with prospective economic advantage including Crescent's damages therefrom.

Dkt. 24, ¶¶ 104–09.

Crescent has alleged no factual specificity whatsoever to support its interference claim. There are no facts to support Crescent's claim that it had a valid economic expectancy of selling its mine in the first half of 2021, nor any explanation of why Crescent had a reasonable economic expectation of selling a mine that is still flooded with AMD. Crescent does not allege that any offers were extended and then lowered or retracted, and offers no facts to support its claim that Bunker Hill engaged in the conduct of which it is accused. Crescent does not identify the third parties Bunker Hill allegedly shared information with, the misrepresentations it purportedly shared, or the "other parties" Bunker Hill induced to devalue the mine. Although such actions may very well have happened, a formulaic recitation of the elements of a claim will not do, and that is what Crescent has done here. The complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Here, Crescent has not provided any information or details to plausibly allege an interference claim, and there is no factual material such that a party could be put on notice for their actions. Accordingly, the Motion to Dismiss is GRANTED as to Cause 7 and the claim

against Bunker Hill is DISMISSED.[10]

### H. Leave to Amend

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc*., 573 F.3d 728, 737 (9t Cir. 2009). Although opportunities to amend are not limitless, *Ingram v. Mouser*, 2021 WL 329559, at *8 (D. Idaho Feb. 1, 2021), the Court will grant leave to amend because Crescent has not adequately alleged its facts, but may cure such deficiencies through amendment.

However, if Crescent does not amend its CERCLA claims, the Court will decline to exercise supplemental jurisdiction over Crescent's remaining state law claims against Placer (Counts 3–6). Idaho State Court is a more appropriate forum to adjudicate these remaining matters.

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also* 28 U.S.C. § 1367(c) ("The district court may decline to exercise supplemental jurisdiction over a claim [ ] if—(3) the district court has dismissed all claims over which it has original jurisdiction."). It is appropriate for the Court to "raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

"With respect to supplemental jurisdiction in particular, a federal court has subject-

---

[10] Cause 7 is also dismissed against Placer to the extent Crescent alleges an interference claim against Placer. Unlike the other causes of action, only Bunker Hill is referenced in Cause 7.

matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (internal citations omitted); *accord Lacey v. Maricopa Cty.*, 693 F.3d 896, 940 (9th Cir. 2012). *See also Fichman v. Media Ctr.*, 512 F.3d 1157, 1162–63 (9th Cir. 2008) ("Having granted judgment on the federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state claims."); *McCoy v. Kretschmar*, 890 F.2d 420 (9th Cir. 1989) ("The district court did not abuse its discretion in declining to exercise pendent jurisdiction over the state law claims since the federal claims were dismissed by summary judgment."). When state law claims are dismissed for lack of jurisdiction, dismissal should be without prejudice. *See Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) (stating that dismissal after declining supplemental jurisdiction should be without prejudice).

Thus, if Crescent fails to properly amend its CERCLA claims, the Court will dismiss Crescent's remaining state law claims against Placer without prejudice.

## V. CRESCENT'S MOTION TO DISMISS COUNTERCLAIM

Placer filed a counterclaim against Crescent pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f). Dkt. 20. Crescent then filed a Motion to Dismiss Counterclaim. Dkt. 29. Placer never responded, but then amended its counterclaim. Dkt. 35. By filing its Amended Counterclaim, with significant changes, Placer's original countercomplaint became moot. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir.1997) (explaining that an "amended complaint supersedes the original, the latter being treated

thereafter as non-existent"). Any motions to dismiss the original countercomplaint are, likewise, moot. *See Anderson v. Bank of Am., N.A.*, 2016 WL 7494304, at *1 (D. Idaho Jan. 13, 2016) ("When a plaintiff files an amended complaint ... the amended complaint becomes the operative complaint and renders any pending motions to dismiss moot" (cleaned up). At oral argument, Crescent agreed that its Motion to Dismiss Counterclaim was mooted by Placer's Amended Counterclaim and acknowledged it had not filed a new motion to dismiss. Accordingly, Crescent's Motion to Dismiss Counterclaim is DENIED as MOOT.

## VI. MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

After the hearing was held but before the Court issued this order, Crescent filed a Motion for Leave to File Second Amended Complaint. Dkt. 47. To allow Crescent an opportunity to file an amended complaint consistent with the Court's findings herein, and to clarify any possible confusion that may arise, the Court MOOTS the Motion for Leave to File Second Amended Complaint. Crescent may refile a new second amended complaint consistent with this order, and does not need to seek leave to do so.

## VII. ORDER

The Court **HEREBY ORDERS**:

1. Bunker Hill's Motion to Dismiss (Dkt. 19) is **GRANTED IN PART** and **DENIED IN PART**:

    a. It is **GRANTED** with respect to Crescent's Cost Recovery under CERCLA Section 107(a), Declaratory Judgment, and Tortious Interference claims against Placer and Bunker Hill, and is also

MEMORANDUM DECISION AND ORDER - 20

> **GRANTED** with respect to Crescent's trespass, nuisance, and negligence claims against Bunker Hill. Such claims are **DISMISSED without prejudice.**
>
> b. It is **DENIED** with respect to Crescent's trespass, nuisance, and negligence claims against Placer.

2. The Court **MOOTS** the Motion for Leave to File Second Amended Complaint. Dkt. 47. Pursuant to the conditions in this Order, Crescent may file a new second amended complaint but does not need to seek leave to do so.

3. If Crescent seeks to amend its complaint, it must do so within thirty (30) days of the date of this Order. In the absence of such filing, the Court will decline to exercise supplemental jurisdiction over the surviving state law claims, they will be dismissed without prejudice, and this case will be closed.

4. Crescent's Motion to Dismiss Counterclaim (Dkt. 29) is **MOOT** and is therefore **DENIED**.

DATED: March 2, 2022

David C. Nye
Chief U.S. District Court Judge