Wade C. Foster, ISB No. 11105
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: (208) 389-9000
Facsimile: (208) 389-9040
wade.foster@stoel.com

Maren R. Norton, admitted *pro hac vice*
Sean T. James, admitted *pro hac vice*
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Facsimile: (206) 386-7500
maren.norton@stoel.com
sean.james@stoel.com

James T. Graves, admitted *pro hac vice*
GRAVES ENVIRONMENTAL
LAW PLLC
4736 NE 187th Place
Lake Forest Park, WA 98155
Telephone: (206) 889-2330
james@gravesenvirolaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **CRESCENT MINE, LLC,** | **Case No. 2:21-cv-00310-DCN** |
| Plaintiff, | **PLAINTIFF CRESCENT MINE, LLC'S RESPONSE IN OPPOSITION TO BUNKER HILL MINING CORPORATION'S MOTION TO AMEND ANSWER TO CRESCENT MINE, LLC'S SECOND AMENDED COMPLAINT AND COUNTERCLAIM [DKT. 99-1]** |
| v. | |
| **BUNKER HILL MINING CORPORATION; PLACER MINING CORPORATION,** (d/b/a New Bunker Hill Mining Co.)**,** | |
| Defendants. | |

### I.      INTRODUCTION

This Court should deny Bunker Hill Mining Corporation's ("BHMC") Motion to Amend Answer to Crescent Mine, LLC's Second Amended Complaint and Crescent Mine, LLC's Counterclaim (the "Motion"). BHMC failed to plead a timely statute of limitations defense in its original answer. Now, nearly **two years** after the deadline to amend pleadings has passed, BHMC

Crescent Mine, LLC's Opposition to Bunker Hill Mining Corporation's Motion to Amend [Dkt. 99-1] - 1

moves to amend its answer, but BHMC has failed to show the requisite good cause to amend the scheduling order, and its lack of diligence is plain.

BHMC contends that a statute of limitations defense only just became apparent when Crescent Mine, LLC ("Crescent") provided an expert report by Paul Rosasco that notes that water has likely been moving back and forth between the Bunker Hill Mine and the Crescent Mine based on BHMC's intermittent pumping of its mine pool. BHMC's argument makes little sense because more recent trespasses of water from the Bunker Hill Mine to the Crescent Mine would negate a statute of limitations defense, not support it.

Even ignoring the inconsistency in BHMC's argument, BHMC's manufactured surprise at a purported "new" theory of liability is plainly contradicted by the record. Crescent's complaint alleged *continuous* discharge of toxic acid mine drainage ("AMD") from the Bunker Hill Mine to the Crescent Mine, and its *continuing* migration and invasion into the Crescent Mine. *See*, *e.g.*, Dkt. 51 ¶¶ 9, 55, 65. There is nothing novel or surprising in Mr. Rosasco's expert report with respect to the ongoing migration of water from the Bunker Hill Mine to the Crescent Mine. Moreover, BHMC's lack of diligence is confirmed by its own observation that Placer Mining Corporation ("Placer") previously pled a statute of limitations defense in response to the same complaint.

BHMC had ample notice of Crescent's position regarding ongoing migration of contaminated mine water from the Bunker Hill Mine from the outset of this litigation. BHMC could have asserted a statute of limitations defense at any time but inexplicably waited until nearly two years after the deadline to amend pleadings to attempt to do so. BHMC's lack of diligence is readily apparent and its untimely motion to amend should be denied.

## II. FACTUAL BACKGROUND

**A.      Placer Mining Intentionally Floods the Bunker Hill Mine and Crescent Mine.**

The Bunker Hill Mine is located in Shoshone County, Idaho. The Crescent Mine is also located in Shoshone County, Idaho, southeast of the Bunker Hill Mine. The two mines are physically connected by a 3.7-mile tunnel known as the Yreka or Y-U Crosscut, which extends from the 3100 level of the Crescent Mine to the 23 Level of the Bunker Hill Mine.

In the early 1990s, Placer, led by Bob Hopper, purchased the Bunker Hill Mine. To avoid incurring water treatment costs from the United States Environmental Protection Agency (EPA) for treating the Bunker Hill Mine's highly contaminated mine water, Placer intentionally diverted enormous volumes of water into the lower levels of the mine instead of sending the water to the nearby EPA-operated Central Treatment Plant.[1] This intentional diversion of water flooded both the Bunker Hill Mine and the neighboring Crescent Mine via the Y-U Crosscut.[2] The history of Placer's intentional flooding of the Bunker Hill Mine and, ultimately, the neighboring Crescent Mine, is summarized in a July 28, 1999, technical memorandum that CH2M Hill prepared for EPA:

> BLP shut down the [Bunker Hill] mine on January 17th, 1991, and had pulled pumps from all of the main pump stations by July 25, 1991. The deepest pump station prior to shutdown was located at the 23 Level. Upon pulling the last pumps, all power was turned off to the mine. About August 23, 1991, an auction was held for sale of all materials at the complex. On December 20, 1991, Robert Hopper [on behalf of Placer] purchased the Bunker Hill Mine from BLP, and the transaction closed on the rest of the property on April 29, 1992. . . .

---

[1] Declaration of Maren R. Norton ("Norton Decl."), Exhibit 1 at 75:23-77:16, 120:12-121:22. The Central Treatment Plant is a water treatment facility that Bunker Hill water must be pumped to for treatment to improve the effluent water quality pursuant to EPA directive.

[2] Placer does not dispute that it flooded the lower workings of the Bunker Hill Mine and caused the Crescent Mine to flood with AMD. *See id.* at 73:5-74:3, 75:6-14, 79:2-80:22, 90:2-6, 90:19-91:18, 120:12-121:22.

> *From the time the power was turned off until April 20, 1992, all water from the Milo Gulch side of the mine above 9 Level (Wardner water) was diverted down the No. 2 Shaft*, and all other water on the 9 Level discharged out of the Kellogg Tunnel to the Central Treatment Plant (CTP).  On April 20, Mr. Hopper[/Placer] diverted the Wardner water to the CTP as well.  By July 15, 1992, power to the mine was reestablished.  On approximately December 10, 1992, the water level in the mine was three sets above the 18 Level.  In January 1993, the No. 3 Hoist was again in operation; however, a cave-in within the shaft kept access to a minimum until March.  By then the water level was just below the 17 Level.  *About October 30, 1993, the mine water line to the CTP was shut down and mine waters were diverted into the deeper underground workings.*  A reading during the summer of 1993 showed the water level at about 20 feet below the 16 Level, and the water level was still below the 15 Level in October 1993.  In December 1994 the pumps at the 11 Level were started and all water was again discharged to the CTP for treatment.

Exhibit 2 at 4 (emphasis added).

A 1991 report titled "The Bunker Hill and Crescent Mines History, Present Conditions And Possible Future Consequences and Actions" indicates that, at that time, (1) "water may already be spilling across the Y-U from Bunker Hill" to the Crescent Mine, and (2) "[d]aily, water is filling the lower B.H. and the Crescent mines (most likely happening now)."[3]

On November 4, 1994, EPA issued a Unilateral Administrative Order directing Placer and Mr. Hopper to maintain the water level below the 11 Level of the Bunker Hill Mine and to "convey the Bunker Hill Mine discharge to the CTP for treatment[.]"[4]  EPA later sued Placer and Mr. Hopper based on their failure to adhere to the Unilateral Administrative Order and other directives from EPA related to the handling of contaminated mine water from the Bunker Hill Mine.[5]

---

[3] Exhibit 3 at 4, 6.
[4] Exhibit 4 at 3-4, 5.
[5] *United States of America v. Placer Mining Corp. (dba New Bunker Hill Mining Co.) and Robert Hopper*, U.S. District Court for the District of Idaho, Case No. 04-126-N-EJL.

Crescent Mine, LLC's Opposition to Bunker Hill Mining Corporation's Motion to Amend [Dkt. 99-1] - 4

**B.     BHMC Demands That Crescent Pay BHMC for the Damages It Owes to EPA.**

BHMC acquired ownership of the Bunker Hill Mine in May 2018 by agreeing to pay EPA $20 million, as well as ongoing water treatment costs, to resolve EPA's lawsuit against Placer and Mr. Hopper.[6] After acquiring the Bunker Hill Mine, BHMC attempted to purchase the Crescent Mine. When those efforts stalled, BHMC decided to attempt "to recover some of the money we owe EPA from Crescent."[7]

On February 3, 2021, BHMC sent a demand letter alleging that Crescent is responsible for 27.45% of all AMD treated at the CTP, demanding $5.49 million from Crescent for past water treatment costs from 1994 to 2017 that BHMC had agreed to pay EPA as part of the purchase price for the Bunker Hill Mine, and threatening litigation.[8] BHMC also demanded $922,320 for water treatment costs that BHMC owed EPA for 2017 to 2021, and asserted that Crescent is responsible for 27.45% of all water treatment costs going forward in perpetuity, which are also obligations that BHMC assumed as part of the purchase price for the Bunker Hill Mine.[9]  Thus, BHMC attempted to shift 27.45% of the purchase price it agreed to pay EPA for the Bunker Hill Mine onto Crescent.

But behind closed doors, BHMC acknowledged that its demands were baseless.  BHMC hired hydrogeologist Barbara Ford and contacted professors at the University of Idaho to try to find support for its allegation that Crescent is responsible for 27.45% of all water treatment costs but admittedly "***could not create [a] basis for allocating [a] % of the water to Crescent***":

---

[6] Exhibit 5 at 3.
[7] Exhibit 6.
[8] Exhibit 7 at 1.
[9] *Id.*

Crescent Mine, LLC's Opposition to Bunker Hill Mining Corporation's Motion to Amend [Dkt. 99-1] - 5

Message
_____

| | |
|---|---|
| **From**: | Brad Barnett [bb@bunkerhillmining.com] |
| **Sent**: | 3/3/2021 2:09:57 AM |
| **To**: | Richard Williams [richardjewilliams@me.com]; Sam Ash [sa@bunkerhillmining.com]; David Wiens [dw@bunkerhillmining.com] |
| **Subject**: | Analysis of Crescent Water Contribution |
| **Attachments**: | GeoHydroScienceMemoCrescentFlow2BH.pdf; Untitled attachment 03193.htm; Bunker Hill Logo.png; Untitled attachment 03196.htm |

We had two teams working on the Crescent water analysis.

The attached memo was Barbara Ford, a hydrogeologist and water modeler for GeoHydroscience LLC. Barbara did a good job of calculating how much water comes out of the mine pool on average, but ultimately could not create basis for allocating % of the water to Crescent. This was the same conclusion that the University of Idaho team reached. We need a lot more data to reach a definitive allocation.

Barbara is creating a description of the data we would need to collect to run a calculation that is accurate enough to hold up in a legal proceeding. That may include information a court will compel Crescent to share with us if they do not voluntarily provide it to us.

One issue we need to keep in mind on this potential claim, Holland and Hart informed me, is that under CERCLA we are limited to a 3-yr period to bring any claims to other liable parties. That period started on May 14, 2018 so we have until May 13, 2021 to get some filed in court or we lose the right to ask them for cost recovery funds.

Within this in mind, I think we should discuss the go-forward strategy this week if we can.

Exhibit 8 at 1 (emphasis added).

Undeterred by the admitted absence of evidence to support its manufactured allocation of water treatment costs, BHMC continued to demand millions of dollars and threaten litigation in order "***to keep the 'discussion' going with our friends at Crescent. Our aim being to keep them under pressure and have this an 'open' case for BD reasons***."[10] Thus, BHMC knew its demands for past and future water treatment costs were meritless but pursued them anyway for leverage in discussions with Crescent regarding a potential sale of the Crescent Mine.

Remarkably, after acknowledging internally that Barbara Ford "could not create [a] basis for allocating [a] % of water to Crescent," BHMC later asserted the exact opposite in a May 3, 2021 correspondence to Crescent, claiming that Ford's analysis supported BHMC's allocation of

_____

[10] Exhibit 9 at 2 (emphasis added).

Crescent Mine, LLC's Opposition to Bunker Hill Mining Corporation's Motion to Amend [Dkt. 99-1] - 6

water treatment costs while also threatening that "[i]f an amicable solution cannot be reached, we will be forced to seek legal remedy next week."[11]   Ultimately, Crescent was forced to initiate litigation to defend itself against BHMC's unrelenting and unethical business practices.

### C.   Procedural History.

Crescent filed its initial complaint in this case on July 28, 2021, and amended its complaint twice, most recently in April 2022. Dkt. 001; *see also* Dkt. 51. Crescent's initial complaint includes allegations of the continuing migration of Bunker Hill Mine AMD into the Crescent Mine. For example, the complaint states:

1. the Bunker Hill Mine "continually generates and continually discharges . . . AMD" to the Crescent Mine (Dkt. 001 ¶ 11);

2. AMD released from the Bunker Hill Mine has contaminated the Crescent Mine "including during the period of Crescent's ownership of the Crescent Mine from 2014 to the present" (¶ 38);

3. there is a "continuing subsurface migration of AMD . . . as well as a continuing invasion of Crescent's interests in the exclusive possession, use, and enjoyment of its subsurface property" (¶ 42);

4. the Bunker Hill Mine released AMD from "1991 through 1994 (***and possibly later periods as well***)" (¶ 57) (emphasis added); and

5. "the ***initial and continuing*** invasions of AMD into the lower levels of Crescent's mine interfered with, and continue to interfere with, Crescent's right to exclusive possession of its property" (¶ 72) (emphasis added).

On November 19, 2021, BHMC added Crescent Silver LLC and Crescent Mine LLC to an existing lawsuit in a Second Amended Complaint. Case No. 2:21-cv-209-REP, Dkt. 16. This Court consolidated that case with this one on April 19, 2022. Case No. 2:21-cv-209-REP, Dkt. 43. Contrary to Crescent's complaint, BHMC alleged that water from Crescent had flowed into the

---

[11] Exhibit 10.

Bunker Hill Mine and polluted it—not the other way around. *See* Case No. 2:21-cv-209-REP, Dkt. 16 ¶¶ 5-16.

BHMC filed its answer to Crescent's Second Amended Complaint on May 20, 2022. Dkt. 56. Despite Crescent's claim that the trespass began as early as 1991, BHMC did not raise a statute of limitations defense.

This Court entered a stipulated scheduling order on August 9, 2022, that provided: "All motions to amend pleadings and join parties, except for allegations of punitive damages, shall be filed on or before November 15, 2022." Dkt. 64 ¶ 2. Subsequent amendments to the scheduling order did not change this deadline. *See* Dkts. 70, 81, 98.

The parties exchanged expert reports on June 7, 2024. Crescent provided the report of Mr. Rosasco, in which he explained, in relevant part, that he intended to "focus on the amount of water flow and acid mine drainage (AMD) contributions, if any, from the Crescent Mine to water in the Bunker Hill Mine." Exhibit 11 at 2. This portion of Mr. Rosasco's report was provided in response to BHMC's contention that water from the Crescent Mine was flooding the Bunker Hill Mine. Mr. Rosasco determined that Crescent Mine receives flooding *from* the Bunker Hill Mine, explaining, "Flooding of the lower workings of the Crescent Mine continues at the current time any time that the pumping rate from the mine pool at Bunker Hill does not exceed the rate of surface water and mine water infiltration into the mine pool." Exhibit 11 at 4. Accordingly, the portion of Mr. Rosasco's report referenced in BHMC's Motion serves to rebut the allegations in BHMC's complaint. Nothing in the report provides an alternative theory of liability.

BHMC did not move to amend its answer to Crescent's Second Amended Complaint until July 15, 2024, more than two years after Crescent filed that complaint, and 20 months after the deadline to amend pleadings. Dkt. 99.

## III. ARGUMENT

### A.   Legal Standard.

When a party files a motion to amend after the Court's case management deadline to amend has passed, courts in the Ninth Circuit apply Federal Rule of Civil Procedure 16(b), followed by a FRCP 15(a) analysis. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *Nelson-Ricks Cheese Co. v. Lakeview Cheese Co.*, No. 4:16-CV-00427-DCN, 2018 WL 1460970, at *1 (D. Idaho Mar. 23, 2018). Under FRCP 16(b), "the court must determine whether 'good cause' exists for the requested modification of the scheduling deadline." *Mays v. Stobie*, No. 3:08-CV-552-EJL-CWD, 2010 WL 5110083, at *4 (D. Idaho Dec. 7, 2010) (citations omitted). Then, only if the court is satisfied that the movant has demonstrated "good cause," the court looks to whether the movant has satisfied the requirements for amendment under FRCP 15(a). *Id.*

Under FRCP 16(b), movants "must show good cause for not having amended their complaints before the time specified in the scheduling order expired." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). "This standard 'primarily considers the diligence of the party seeking the amendment.'" *Id.* (quoting *Johnson*, 975 F.2d at 607-09 (9th Cir. 1992)). "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . . If that party was not diligent, then the inquiry should end." *Johnson*, 975 F.2d at 609. Critically, "the failure to act by a deadline is indicative of a lack of diligence, at least in the absence of a showing of some unexpected event occurring after the deadline. It shows that a party is not diligently attempting to comply with the schedule, but is ignoring it." *Holguin v. Shinn*, No., CV201631PHXDLRJFM, 2022 WL 3648476, at *3 (D. Ariz. Aug. 4, 2022), *report and recommendation adopted*, 2022 WL 3647787 (D. Ariz. Aug. 24, 2022).

If a court reaches the FRCP 15(a) analysis, it looks to four factors to determine the propriety of the motion: 1) undue delay, bad faith, or dilatory motive on the part of the movant; 2) repeated failure to cure deficiencies by amendments previously allowed; 3) undue prejudice to the opposing party by virtue of allowance of the amendment; and 4) futility of amendment. *Stanton v. Battelle Energy All., LLC*, 83 F. Supp. 3d 937, 949 (D. Idaho 2015). The "crucial factor is the resulting prejudice to the opposing party." *Howey v. United States*, 481 F.2d 1187, 1189 (9th Cir.1973). "[L]eave to amend is by no means automatic." *In re Cir. Breaker Litig.*, 175 F.R.D. 547, 550 (C.D. Cal. 1997) (citing *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

**B.     BHMC Fails to Show Good Cause Under FRCP 16(b).**

BHMC failed to exercise the requisite diligence in seeking its amendment. BHMC was careless in its answer when it did not plead defenses available to it, and it is now using Mr. Rosasco's expert report as an excuse to rectify its failure more than two years after Crescent filed its last complaint, and 20 months after this Court's deadline. BHMC's arguments in favor of amendment are also self-defeating and fail for multiple reasons.

First, BHMC argues (wrongly) that Crescent would not be prejudiced by any amendment because Placer previously pled a statute of limitations defense in its answer to Crescent's Second Amended Complaint. Dkt. 99-1 at 2. As explained below, fact discovery has long since closed, and Crescent would be prejudiced by allowing the amendment so late in proceedings. Further, Placer asserted this exact defense in its initial answer, nearly three years ago. Dkt. 20 at 11 (Sept. 20, 2021). This weighs against allowing BHMC to amend its answer because it shows the longstanding lack of diligence BHMC has displayed in raising this defense.

As this Court has held, a movant is not diligent where the movant "was aware of the facts in support of its [affirmative] defense," but waited over a year after it filed its answer, and nine

months after the deadline, to request an amendment to plead an affirmative defense. *TB Holding Co. v. J&S Siding*, No. 4:22-CV-00307-BLW, 2024 WL 1486144, at *4 (D. Idaho Apr. 5, 2024). Placer and BHMC received Crescent's complaint at the same time, which asserts that both are liable for the continuing trespass caused by the continuing invasion and flooding of water from the Bunker Hill Mine to the Crescent Mine. Based on the allegations in the complaint, which have not meaningfully changed, Placer timely asserted a statute of limitations defense while BHMC did not. Thus, the defense was equally available to BHMC from the outset, yet BHMC needlessly waited multiple years to attempt to assert it.

Further, BHMC's proffered justification for seeking to amend its answer nearly two years after the deadline to amend pleadings has passed is nonsensical. BHMC claims that it only now needs to add a statute of limitations defense because Mr. Rosasco's report notes that "[f]looding of the lower workings of the Crescent Mine continues at the current time any time that the pumping rate from the mine pool at Bunker Hill does not exceed the rate of surface water and mine water infiltration into the mine pool." Dkt. 99-1 at 4-5 (quoting Rosasco Report at 15). But Mr. Rosasco's statement alleges a *more recent* injury, so it is unclear why this would give rise to a statute of limitations defense. A statute of limitations, as a time limit on pleading, necessarily exists to preclude raising stale claims. *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137 (9th Cir. 2001). Even assuming, *arguendo*, that the Rosasco Report asserted more recent flooding for the first time, it makes no sense for BHMC to amend its answer to add a statute of limitations defense based on the allegation of a more recent injury. Such a defense was apparent given the timeline of events dating back to the 1990s. If anything, the Rosasco Report provides grounds for denying a statute of limitations defense because it establishes a more recent trespass.

Even ignoring BHMC's illogical argument, the statement in question is consistent with the allegations in Crescent's original complaint and is not a "new theory," as BHMC erroneously contends.  Crescent's complaint alleged "*continuing* subsurface migration of AMD" and noted the "initial *and continuing* invasions of AMD into the lower levels of Crescent's mine" due to the "*continual*[] generat[ion] and *continual*[] discharges" from the Bunker Hill Mine. Dkt. 51 ¶¶ 9, 55, 94 (emphasis added). The language in the Rosasco Report is consistent with these allegations from the complaint. *See* Exhibit 11 at 4.

As such, BHMC's Motion is not based on any new information. The defense was available to BHMC years ago. Where a movant has waited more than "eight months to seek leave to amend" and "not ma[de] a persuasive showing that the proposed amendments were based on information that he obtained only after the original deadline for amendments had passed," courts will deny the motion to amend. *W. All. Bank v. Jefferson*, 698 F. App'x 914, 915 (9th Cir. 2017). Here, BHMC's Motion came nearly two years after the deadline to amend pleadings and is not based on any new information or "theory."

BHMC has failed to show diligence or good cause to amend. It had ample notice of Crescent's claims and more than adequate time to raise this defense. This Court should deny BHMC's Motion under FRCP 16(b) for failure to show good cause and it need not reach the FRCP 15(a) analysis. *Johnson*, 975 F.2d at 609.

**C.      The FRCP 15(a) Factors Weigh in Favor of Denying BHMC's Motion.**

If this Court reaches the FRCP 15(a) analysis, the relevant factors also favor denying BHMC's Motion.

### 1.      BHMC Exhibited Undue Delay in Moving to Amend.

As explained above, BHMC waited two years after Crescent's complaint to move to amend, and 20 months after the deadline to amend pleadings had passed. "[W]hen considerable time has passed between the filing of the original pleading and the motion to amend, the burden remains with the movant to show some valid reason for the delay." *In re Cir. Breaker Litig.*, 175 F.R.D. at 550. The Ninth Circuit has stated that waiting both eight and 15 months constitutes "undue delay." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). BHMC is well past those limits and has failed to provide any valid reason for this substantial delay. This alone warrants denial.

### 2.      BHMC Failed to Previously Attempt to Cure Its Deficiency.

BHMC argues that this factor favors amendment because it has not previously sought to amend. However, the case schedule has been amended multiple times and BHMC had multiple opportunities to request an extension of the deadline to amend pleadings. This Court originally scheduled the deadline to amend pleadings in August 2022. Dkt. 64. Since then, the parties have stipulated, and this Court ordered, changes to the scheduling order in July 2023 (Dkt. 70), December 2023 (Dkt. 81), and April 2024 (Dkt. 98). At each of these occasions, BHMC had every opportunity to address the deadline to amend pleadings, but it declined to do so. Its attempt now is too little, too late.

### 3.      BHMC's Motion to Amend Is Not Premised on Any New Facts and Crescent Will Be Unduly Prejudiced if the Amendment Is Granted Because It Is Well Beyond the Close of Fact Discovery.

A motion to amend must be denied when "[t]he proposed amendment was not based upon any facts which were not known or readily available to the defendants and their counsel, at least when the pretrial statement was signed." *Komie v. Buehler Corp.*, 449 F.2d 644, 648 (9th Cir.

1971). Here, the facts giving rise to the continuing trespass claim, the continued flooding of the Crescent Mine, and water migrating between the mines, were known or readily available to BHMC at the time of this Court's scheduling deadline.

As previously noted, Crescent's initial complaint stated that the Bunker Hill Mine "continually generates and continually discharges . . . AMD" to the Crescent Mine, and that the contamination has been ongoing, "including during the period of Crescent's ownership of the Crescent Mine from 2014 to the present." Dkt. 001 ¶¶ 11, 38. Crescent alleged the "continuing subsurface migration of AMD . . . as well as a continuing invasion of Crescent's interests in the exclusive possession, use, and enjoyment of its subsurface property" based on Bunker Hill's releases of AMD from "1991 through 1994 (***and possibly later periods as well***)." *Id.* ¶¶ 42, 57 (emphasis added). Crescent alleged injury based on the "***continuing*** invasions of AMD into the lower levels of Crescent's mine." *Id.* ¶ 72 (emphasis added). Thus, from the outset, BHMC knew that Crescent's theory of liability and damages including continuing flooding and water migration between the mines up to the current time. BHMC did not unearth any novel theory in Mr. Rosasco's expert report.

Further, BHMC seeks to amend its answer at a late stage of the litigation well beyond the expiration of fact discovery. Crescent would be prejudiced by the amendment because it did not have the ability to propound written discovery or explore this affirmative defense during fact depositions, and reopening fact discovery would further delay proceedings. Both of these facts establish prejudice and weigh in favor of denying leave to amend. *See*, *e.g.*, *TB Holding Co.*, 2024 WL 1486144, at *4 (denying motion to amend to assert new affirmative defenses more than one year after amended answer was filed due to "the prejudice caused by the delay"); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of motion to amend where

amendment "would have required further discovery, which was to close five days after the motion

to amend was filed" because "[t]he requirement of additional discovery would have prejudiced

Edison and delayed the proceedings."); *Robinson v. Twin Falls Highway Dist*., 233 F.R.D. 670,

673-74 (D. Idaho 2006) ("[R]eopening discovery with resulting delay in the proceedings supports

a finding of prejudice from a delayed motion to amend."); *Lockheed Martin Corp. v. Network

Sols., Inc.,* 194 F.3d 980, 986 (9th Cir. 1999) (affirming denial of motion to amend where new

cause of action would require reopening discovery); *Solomon v. N. Am. Life & Cas. Ins. Co.,* 151

F.3d 1132, 1139 (9th Cir. 1998) (finding no abuse in discretion in denial of leave to amend where

motion to amend was made on eve of discovery cut-off).

### 4.    BHMC's Amendment Would Be Futile.

"Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant

leave to amend." *Lockheed Martin Corp.*, 194 F.3d at 986. "An amendment is futile when 'no set

of facts can be proved under the amendment to the pleadings that would constitute a valid and

sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017)

(quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

BHMC argues that it needs to assert a statute of limitations defense based on the statement

in Mr. Rosasco's expert report that "[f]looding of the lower workings of the Crescent Mine

continues at the current time[.]" Dkt. 99-1 at 4-5. Even assuming this does raise a new theory of

liability (which it does not), this statement shows that the Crescent Mine is *currently* being flooded

whenever BHMC does not pump enough water to offset sources of inflow. Just one page later in

the report, Mr. Rosasco, relying on data that BHMC produced, notes that there were periods as

late as 2023 where BHMC was not pumping at all. Exhibit 11 at 5. Accordingly, under this "new

theory" of liability, as BHMC frames it, Crescent would be the victim of ongoing trespasses from

BHMC's flooding of the Crescent Mine *at the current time*, and certainly as late as 2023. The statute of limitations for trespass in Idaho is three years. I.C. § 5-218(2). Thus, BHMC's statute of limitations defense would be futile because of the recent and ongoing nature of this flooding. Accordingly, this factor also supports denial of leave to amend.

### IV.    CONCLUSION

BHMC failed to show good cause under FRCP 16(b) for not having amended its answer before the deadline in this Court's scheduling order. BHMC leans on an illogical and ill-conceived theory to attempt to rectify its failure in not raising a timely statute of limitations defense after a delay of two years. Accordingly, it was not diligent in seeking the amendment, and this Court should deny its motion to modify the scheduling order. Moreover, FRCP 15(a) factors weigh in favor of denial due to the prejudice Crescent would incur, the undue delay BHMC exhibited, and the futility of its amendment. This Court should deny leave to amend.

DATED this 5th day of August, 2024.

STOEL RIVES LLP

*/s/Wade Foster*
Wade C. Foster, ISB No. 11105
Maren R. Norton, admitted *pro hac vice*
Sean James, admitted *pro hac vice*
Attorneys for Plaintiff