Christopher R. Hogle (USB #7223)
Admitted pro hac vice
Sarah M. Perkins (USB #17297)
Admitted pro hac vice
HOLLAND & HART LLP
222 S. Main St., Ste. 2200
Salt Lake City, UT  84101
Telephone:  (801) 799-5800
CRHogle@hollandhart.com
SMPerkins@hollandhart.com

Murray D. Feldman (ISB #4097)
Christopher C. McCurdy (ISB #8552)
HOLLAND & HART LLP
800 W. Main St., Ste. 1750
Boise, ID  83701
Telephone:  (208) 342-5000
mfeldman@hollandhart.com
ccmccurdy@hollandhart.com

*Counsel for Defendant, Counterclaimant, and Third-Party Plaintiff Bunker Hill Mining Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| CRESCENT MINE, LLC,<br><br>      Plaintiff,<br><br>vs.<br><br>BUNKER HILL MINING CORPORATION; and PLACER MINING CORPORATION (d/b/a New Bunker Hill Mining Co.),<br><br>      Defendants. | Case No. 2:21-cv-00310-DCN<br><br>**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS** |

Defendant Bunker Hill Mining Corporation ("BHMC") submits this reply in support of its Motion for Summary Judgment on Crescent Mine, LLC's Claims (Dkt. 112) ("Motion").

**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS** - i

# TABLE OF CONTENTS

A.   Plaintiff's CERCLA §§ 107(a) and 113(g)(2) claims fail because Plaintiff has not incurred any response costs ...................................................................................1

B.   Plaintiff failed to meet its burden on its trespass claims.......................................2

C.   Plaintiff failed to meet its burden on its nuisance claim........................................5

D.   Plaintiff provides no argument on its negligence claim.........................................5

E.   Plaintiff's tort claims are time-barred. ...................................................................6

F.   CERCLA § 122(e)(6) forecloses imposing a duty on BHMC to dewater the Crescent Mine, and § 113(h) withdraws jurisdiction over claims that depend on such a duty. .............................................................................................................7

CONCLUSION................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................................... 4

*Brose v. Twin Falls Land & Water Co.*,
24 Idaho 266, 133 P. 673 (1913) .................................................................................. 5

*Calmat Co. v. San Gabriel Valley Gun Club*,
809 F. Supp. 2d 1218 (C.D. Cal. 2011) ........................................................................ 2

*Chubb Custom Ins. Co. v. Space Sys. Loral, Inc.*,
710 F.3d 946 (9th Cir. 2013) ........................................................................................ 1

*Dant & Russell*,
915 F.2d at 249 (9th Cir. 1991) .................................................................................... 1

*Doe v. Snyder*,
28 F.4th 103 (9th Cir. 2022) ....................................................................................... 10

*Gallagher & Kennedy, P.A. v. City of Phoenix*,
No. 23-15938, 2024 U.S. App. LEXIS 22106, 2024 WL 4003040 (9th Cir. Aug. 30, 2024) ............................................................................................................................ 1

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (*en banc*) ..................................................................... 10

*Goldingay v. Progressive Cas. Ins. Co.*,
306 F. Supp. 3d 1259 (D. Or. 2018) ............................................................................. 3

*Hanford Downwinders Coalition, Inc. v. Dowdle*,
71 F.3d 1469 (9th Cir. 1995) ...................................................................................... 10

*Otay Land Co. v. United Enterprises, Ltd.*,
338 Fed. Appx. 689 (9th Cir. 2009) .............................................................................. 2

*Pakootas v. Teck Cominco Metals, Ltd.*,
646 F.3d 1214 (9th Cir. 2011) .................................................................................... 10

*Payne v. Skaar*,
127 Idaho 341, 900 P.2d 1352 (1995) .......................................................................... 5

*Trimble v. Asarco, Inc.*,
232 F.3d 946 (8th Cir. 2000) ........................................................................................ 1

*U.S. v. Finley*,
   301 F.3d 1000 (9th Cir. 2002) ..................................................................................................6

*U.S. v. Oregon State Medical Society*,
   343 U.S. 326 (1952) ..............................................................................................................10

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   865 F.2d 1539 (9th Cir. 1989) ................................................................................................4

## STATUTES

42 U.S.C. § 9622(e)(6) ..................................................................................................................7

I.C. § 6-202 ....................................................................................................................................3

I.C. § 6-202(2)(a), (b) ....................................................................................................................2

I.C. § 52-109 ..................................................................................................................................5

CERCLA § 107(a) ....................................................................................................................1, 2

CERCLA § 113(g)(2) ...............................................................................................................1, 2

CERCLA § 113(h) ...................................................................................................................7, 10

## OTHER AUTHORITIES

Fed. R. Civ. P. 37(c)(1) ..................................................................................................................9

13 Moore's Federal Practice – Civil § 65.02 ..............................................................................10

Restatement (Second) of Torts § 161(2) ...................................................................................2, 3

A.  **Plaintiff's CERCLA §§ 107(a) and 113(g)(2) claims fail because Plaintiff has not incurred any response costs.**

To assert a CERCLA § 107(a) claim, the claimant itself must have incurred the costs on which its § 107 claim is based.[1]  Plaintiff has not done so.

Plaintiff seeks refuge in *Trimble v. Asarco, Inc.*, 232 F.3d 946 (8th Cir. 2000), and two invoices sent to Plaintiff but paid by Crescent Silver, LLC ("Crescent Silver").[2]  *Trimble*, however, supports dismissal of Plaintiff's CERCLA claims.  In *Trimble*, the costs were paid by the claimants' attorneys.  The claimants agreed to reimburse their lawyers, but only if they won in the litigation.  The *Trimble* court affirmed the dismissal of the CERCLA claims because the claimants had not incurred any costs *by committing resources to meet them*:

> Thus, [*In re] Dant & Russell[, Inc.*, 951 F.2d 246, 249-50 (9th Cir. 1991),] *is* instructive. . . .  In *Dant & Russell*, the Ninth Circuit observed:  "Under CERCLA's scheme for private action, response costs may not be recovered when *there has been no commitment of resources for meeting these costs*."[3]

In this case, Plaintiff likewise committed no resources to meet any costs.  It is undisputed that Plaintiff could not have committed resources because, as its Rule 30(b)(6) designee testified, Plaintiff has no employees and no contracts in which commitments may be made.[4]  Therefore,

---

[1] *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 967 (9th Cir. 2013) ("Congress implicitly conveyed the intent, through the plain language of section 107(a), that a derivative incurment of response costs was not contemplated under section 107(a)."); *Gallagher & Kennedy, P.A. v. City of Phoenix*, No. 23-15938, 2024 U.S. App. LEXIS 22106, *5-6, 2024 WL 4003040 (9th Cir. Aug. 30, 2024) (holding that § 107(a) claim was properly dismissed because the plaintiff did not itself incur the response costs on which its claim was based; rather, such costs were paid from a fund to which plaintiff did not contribute).
[2] Pltf's Opp. to Mots. for Summ. J. (Dkt. 133) ("Opp.") at 5-6.
[3] *Trimble*, 232 F.3d at 958 (emphasis added) (quoting *Dant & Russell*, 915 F.2d at 249).
[4] 12/2/24 Hogle Dec. (Dkt. 112-11) Ex. 2 (2/21/24 Crescent 30(b)(6) Dep.) at 15:14-16, 63:21-24, 190:21-191:5, 248:23-249:15.

**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS** - 1

Plaintiff's § 107(a) claim fails.[5]  And without a § 107(a) claim, its CERCLA § 113(g)(2) claim for declaratory judgment fails as well.[6]

B.  **Plaintiff failed to meet its burden on its law trespass claims.**

Because BHMC neither "inva[ded]" Plaintiff's property nor "enter[ed]" or "remain[ed]" there,[7] Plaintiff relies on Restatement (Second) of Torts § 161(2) to argue that BHMC owed Plaintiff a duty to dewater the Crescent Mine.  Restatement § 161(2) is inapplicable.  It provides:

> A trespass may be committed by the continued presence on the land of a structure, chattel, or *other thing* which the actor's predecessor in legal interest *therein* has tortiously placed there, if the actor, *having acquired his legal interest in the thing* with knowledge of such tortious conduct or having thereafter learned of it, fails to remove *the thing*.[8]

This section plainly does not apply unless the defendant acquired a legal interest in the allegedly trespassing thing.

---

[5] Plaintiff argues that the Court should overlook its inability to satisfy an essential element of its § 107(a) claim because Crescent Silver has incurred response costs, the Crescent Parties moved to amend to add Crescent Silver as a plaintiff, and Crescent Silver can file a stand-alone complaint or assign its claims to Plaintiff.  Opp. at 6 n.5.  The Crescent Parties' motion to amend is opposed (Dkts. 130, 134), and Crescent Silver has apparently neither filed a stand-alone complaint nor assigned any claim.  Even if it had, the claim would be premature.  The costs presented in support of the § 107(a) claim reflect a "response" in name only.  No government environmental protection agency was involved, no remedial investigation has been completed, and no actual cleanup has occurred.  Courts dismiss as unripe CERLCA claims for such "response" costs.  *See Otay Land Co. v. United Enterprises, Ltd.*, 338 Fed. Appx. 689, 691 (9th Cir. 2009) ("Absent a reliable basis to determine the clean-up costs, [the claimant's] action was premature. . . .  The plaintiffs also have not shown that the property, which no public agency has indicated needs remediation, currently poses 'an imminent and substantial endangerment to health or the environment.'"); *Calmat Co. v. San Gabriel Valley Gun Club*, 809 F. Supp. 2d 1218, 1221 (C.D. Cal. 2011) (dismissing CERCLA claim as unripe where "no public agency has indicated the need for remediation, and . . . it has not begun cleanup or incurred cleanup costs.").
[6] *See* 3/2/22 Memo. Dec. and Order (Dkt. 49) at 12.
[7] *Id*. at 14; I.C. § 6-202(2)(a), (b).
[8] Restatement (Second) of Torts § 161(2) (emphasis added).

**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS** - 2

Because it lacks evidence that BHMC acquired a legal interest in the allegedly trespassing water, Plaintiff insists that § 161(2) does not mean what it says. Rather than the text of § 161(2), Plaintiff relies on how *Goldingay v. Progressive Cas. Ins. Co.*, 306 F. Supp. 3d 1259 (D. Or. 2018), paraphrases it: "a trespass may be committed by the continued presence on the land of a 'thing' that a landowner's predecessor in interest tortiously placed there, if the landowner fails to remove the thing after having learned of it."[9]

*Goldingay* incorrectly paraphrases § 161(2). Section 161(2) has nothing to do with land owned by persons accused of trespass. It applies only to a "*thing* which the actor's predecessor in legal interest *therein* has tortiously placed [on the plaintiff's land], if the actor, *having acquired his legal interest in the thing* with knowledge of such tortious conduct or having thereafter learned of it, fails to remove *the thing*."[10] Plainly, § 161(2) is *not* a rule of landowner liability; it is a rule of "*thing*"-owner liability.

Ownership of land from which a trespassing thing originated does not trigger the rule in § 161(2). If A drives a car from his home and parks it without permission on B's land, a buyer of A's home would not be liable for trespass, but a buyer of the parked car might be. Plaintiff has presented no evidence of BHMC's ownership of the water that allegedly flowed into the Crescent Mine decades before BHMC acquired the Bunker Hill Mine. Under Idaho law, there can be no ownership interest in ground water, as BHMC demonstrated in its Motion. Accordingly, Plaintiff's trespass claims fail as a matter of law.[11]

---

[9] *Id.* at 1266.
[10] Restatement (Second) of Torts § 161(2) (emphasis added).
[11] Even if Restatement § 161(2) is a rule of landowner liability, Plaintiff's statutory trespass claim fails because the rule in that section is found nowhere in the Idaho trespass statute, and BHMC indisputably did not "enter" or "remain[]" upon Plaintiff's land, as those terms are defined. *See* I.C. § 6-202.

**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS - 3**

Plaintiff argues that water trespasses into the Crescent Mine when BHMC pauses pumping at the Bunker Hill.[12] There is no evidence of any Bunker Hill Mine water flow to the Crescent Mine when pumping temporarily ceases. One of Plaintiff's experts testifies that there is insufficient data to identify any time since April 1991 when water allegedly entered the Crescent from the Bunker Hill Mine.[13] Plaintiff's other hydrogeologist has no evidence of instances when water may have entered the Crescent Mine; he merely suggests that water may flow to the Crescent when BHMC pumping needs to pause due to CTP capacity constraints.[14] Such speculation is insufficient to prevent summary judgment dismissal of the trespass claims.[15]

Even accepting such speculation, Plaintiff's argument presumes that BHMC owed a legal duty to constantly pump water for the benefit of the Crescent Mine, even when the CTP cannot handle any more water. There is no basis in the law for such a legal duty, which would defy EPA directions to BHMC to pause pumping to prevent overwhelming the CTP.

Furthermore, Plaintiff has disclosed no damages computation or evidence based on such pumping pauses. According to the Crescent Mine manager, at least since 2008, the water level in the Crescent Mine has always been about 700 feet below the Hooper Tunnel.[16] Plaintiff's sole damages disclosure—$13.8 million to dewater the entire Crescent Mine or $27 million in diminution in value—bears no relation to BHMC's pumping pauses. Plaintiff's claim for such alleged damages fails.

---

[12] Opp at 28.
[13] *Id*. Ex. 18 (Dkt. 112-27) (Beale) at 145:17-146:5.
[14] *Id*. Ex. 16 (Dkt. 112-25) (Rosasco) at 87:24-88:21, 89:7-90:2.
[15] *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir. 1989) ("A '*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986))).
[16] 12/2/24 Hogle Dec. (Dkt. 112-14) Ex. 5 (Durick) at 44:7-14, 97:13-19.

**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS - 4**

### C. Plaintiff failed to meet its burden on its nuisance claim.

On its nuisance claim, Plaintiff has the burden to show "[t]hat the defendant has engaged in a course of conduct" that is unreasonably injurious to health or the senses or obstructs its use of its land.[17] Plaintiff argues that the source of the alleged nuisance is the diversion of mine water that occurred "between October 1993 and December 1994."[18]

BHMC is not liable for an alleged nuisance completed decades before BHMC's ownership of the Bunker Hill Mine. Plaintiff invokes I.C. § 52-109, but *Brose v. Twin Falls Land & Water Co.*, 24 Idaho 266, 273, 133 P. 673, 676 (1913), makes that statute inapplicable to this case. Under *Brose*, § 52-109 only "preclude[s] the purchaser of *property containing a nuisance* [from] defending against an action for damages or to abate the same, on the ground that he did not create the nuisance."[19] BHMC did not purchase "property containing a nuisance." By the time BHMC purchased the Bunker Hill Mine in 2022, the alleged nuisance was completed. "This statute does not impose . . . liability" on a purchaser "for the damage *previously* inflicted by [a] nuisance."[20] BHMC acquired the Bunker Hill Mine in 2022, and by then, the alleged damage of which CM complains had been "inflicted." BHMC is not liable for nuisance.

### D. Plaintiff provides no argument on its negligence claim.

BHMC's Motion explained how Plaintiff's negligence claim fails.[21] Plaintiff's Opposition does not address the negligence claim, so the Court should dismiss it.

---

[17] *Payne v. Skaar*, 127 Idaho 341, 346 n.2, 900 P.2d 1352, 1357 n.2 (1995) (quoting IDJI 490); 3/2/22 Memo. Dec. and Order (Dkt. 49) at 15 ("Crescent's nuisance claims similarly fail against Bunker Hill because Bunker Hill did not initiate the nuisance.").
[18] Opp. at 31-32.
[19] *Brose*, 24 Idaho at 273, 133 P. at 676 (emphasis added).
[20] *Id.* (emphasis added).
[21] Dkt. 112-1 at 11.

**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS - 5**

E. **Plaintiff's tort claims are time-barred.**

According to Plaintiff, the alleged trespass and nuisance are reasonably abatable and that makes them "continuing" torts outside statutes of limitations. Plaintiff, however, has no admissible evidence to prove that they are reasonably abatable. Plaintiff argues that allegedly trespassing water may be abated by pumping the Crescent dry, either through the Bunker Hill Mine and conveying the water to the CTP or through the Crescent Mine and conveying the water to a new treatment plant built at the Crescent Mine, and installing a plug in the Y-U Crosscut. Plaintiff has offered no expert opinion testimony that either of those approaches would actually work at reasonable cost.[22] To show that these approaches make the alleged trespass and nuisance reasonably abatable, Plaintiff must present expert opinion testimony because their ability to effectively and reasonably dewater the Crescent Mine involves matters that go beyond a layperson's knowledge.[23] Plaintiff's dewater cost expert, Neal Rigby, did not address the viability of either approach, and Plaintiff designated no other expert on dewater methods.[24] Thus, Plaintiff is unable to show that the Crescent Mine flooding is reasonably abatable, which means that the alleged torts are not "continuing," but rather "permanent" and time-barred.

---

[22] Plaintiff points to an email from BHMC's V.P. of Sustainability that BHMC "can seal" the Y-U Crosscut. 1/10/25 Norton Dec. (Dkt. 133-3) Ex. A. An email is not expert opinion testimony, and Plaintiff never designated the email's author as an expert; nor anyone else on the feasibility of Y-U Crosscut plug. Plaintiff also points to BHMC documents contemplating a new treatment plant at the Bunker Hill Mine, but a treatment plant at the Crescent Mine is an entirely different proposition for which Plaintiff has advanced no expert opinions.
[23] *U.S. v. Finley*, 301 F.3d 1000, 1013 (9th Cir. 2002).
[24] Stmt. of Und. Fact in Supp. of BHMC's MSJ (Dkt. 112-2) ("SOF") ¶ 47. Plaintiff cites the Rigby report to assert that "it is both technically and economically feasible to dewater the [Crescent] Mine" (Dkt. 133-1 ¶ 11), but nothing in the Rigby report addresses technical and economic feasibility. It nowhere addresses concerns raised in response to the 1998 proposal to dewater the Crescent Mine, for example. SOF ¶ 39. It merely finds "reliable" a 2010 "Preliminary Cost Estimate for Dewatering Bunker Hill & Crescent Mine" (which itself did not evaluate feasibility) and brings the 2010 costs current. SOF ¶¶ 45-46.

**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS - 6**

**F.     CERCLA § 122(e)(6) forecloses imposing a duty on BHMC to dewater the Crescent Mine, and § 113(h) withdraws jurisdiction over claims that depend on such a duty.**

Plaintiff argues that its claims are consistent with §§ 122(e)(6) and 113(h) because EPA orders do not *forbid* BHMC from dewatering the Bunker Hill down to the 23 Level and the Crescent Mine. Plaintiff's argument is a red herring. The issue is not whether EPA has *forbid* a particular remedial action; the issue is whether EPA has *authorized* it. CERCLA § 122(e)(6) prevents a PRP from undertaking any unauthorized remedial action at a facility where the EPA or a PRP has initiated a remedial investigation and feasibility study. 42 U.S.C. § 9622(e)(6). There is no question that remedial investigations and feasibility studies have been initiated by the EPA and PRPs involving the Bunker Hill and Crescent Mines.[25] The only issue is whether EPA has authorized dewatering the Crescent Mine. It indisputably has not done so.

Plaintiff presents a 2018 email from BHMC to EPA, which asks for confirmation that the BHMC/EPA settlement agreement does not restrict BHMC from dewatering below the 11 Level, and EPA's response that BHMC may drain the mine pool "lower" than the 11 Level.[26] That email, however, does not authorize dewatering the Crescent Mine. It makes no mention of the Crescent Mine, let alone the scope of the dewatering program that forms the basis for Plaintiff's tort claims. Dr. Rigby asserts that 1.32 billion gallons of water would have to be pumped out of the Crescent Mine, the Y-U Crosscut, and the Bunker Hill Mine and conveyed to the CTP for treatment.[27] The CTP's treatment capacity is limited, and it is not exclusive to water from the Bunker Hill Mine; it treats water from other sources as well.[28] Dr. Rigby further asserts that it

---

[25] 12/2/24 Hogle Dec. (Dkt. 112-10) Ex. 1 (2015 Tech. Rep. – Dep. Ex. 51) at CRES_00026858-60; 12/2/24 Norton Dec. (Dkt. 116-7) Ex. D (2001 RI/FS) at BHMC_001264, 1268.
[26] 1/10/25 Norton Dec. (Dkt. 133-8) Ex. F.
[27] SOF ¶ 41.
[28] SOF ¶ 7.

**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS - 7**

would take 550-600 days of pumping 20 hours/day for that much water, and he concedes that unless the Y-U Crosscut is plugged, BHMC would have to pump forever to keep the Crescent Mine dewatered.[29] In 1998, the EPA was presented with a proposal to dewater the Crescent Mine, and EPA's consultant raised several concerns with it.[30] None of the concerns that EPA's consultant identified and nothing about the scope of Dr. Rigby's dewater program were addressed in the 2018 email exchange Plaintiff presents.

Plaintiff also cites a March 3, 2022 email from an EPA employee for the proposition that BHMC has "been expressly informed by EPA that it has the right to" dewater the Bunker Hill Mine down to the 25 Level.[31] The email says no such thing.

Plaintiff argues that BHMC told investors that it plans to dewater the Bunker Hill Mine. Plaintiff ignores the portions of those presentations that state that such plans may not come to fruition due to such factors as "failures to obtain required governmental, environmental or other project approvals."[32] Plaintiff also cites internal emails and drafts, even though they expressly state that the dewater plans are subject to EPA approval.[33]

---

[29] SOF ¶¶ 42-43.
[30] SOF ¶ 39.
[31] Opp. at 13; 1/10/25 Norton Dec. (Dkt. 133-9) Ex. G.
[32] *Id*. Ex. H at 2 ("Factors that could cause actual results to differ materially from such forward-looking information include . . . delays in obtaining or failures to obtain required governmental, environmental or other project approvals. . . ."), Ex. I at 2 (same), Ex. T at 2 (same), Ex. U at 2 (same), Ex. V at 2 (same).
[33] *Id*. Ex. C at BHMC_017604 ("It assumes that the EPA is comfortable with the system and gives their endorsement by May 2023 for the IPDES water discharge permit."), Ex. D at BHMC_016167 ("The dynamics [at] play would be: . . . 3. EPA allows us to (a) replace the AMD water flows with more alkaline stored water (currently 11th through 27th levels) and/or (b) use their added capacity partially or completely so we can dewater. . . ."), Ex. Q at 20 (the "plan to dewater for deep level access" cited by Plaintiff (Opp. at 133 n.33) is within the "Ongoing Discussions between DOJ, EPA and BHMC" section and which ends with: "Discussion of these issues has begun and BHMC's concepts for restructuring the terms of the Consent Decree have been presented to EPA and DOJ for further discussion.").

**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS** - 8

These and the other documents Plaintiff relies on are simply irrelevant. Plaintiff cites BHMC's November 2021 Technical Report and Pre-Feasibility Study, but the lowest level contemplated in the study is the 15 Level, which is 1,400 feet above the Y-U Crosscut.[34] Plaintiff cites a prior version of the same study, but that was a "DRAFT."[35] As stated, the final version contemplated no operations below the 15 Level.

Plaintiff relies on discussion in a "pitch" of "ore that *could be* accessed after a dewatering process takes place below the 4,000-foot depth level," but Plaintiff fails to mention that no such "dewatering process" was identified, and the entire discussion was in a section dealing with "blue sky left at this project."[36] By definition, "blue sky" refers to notions "that are conceived by unconstrained imagination or optimism."[37]

In response to BHMC's argument that CERCLA § 122(e)(6) prevents the imposition of remedial actions unauthorized by EPA, Plaintiff advances yet more remedial actions unauthorized by EPA; namely, the construction and operation of a new treatment plant at the Crescent Mine and a plug of the Y-U Crosscut. Not only are such remedial actions unauthorized by EPA, but Plaintiff disclosed no damages computation (expert or otherwise) based on a new treatment plant and plugging the Y-U Crosscut. Thus, Plaintiff may not seek damages to implement those actions.[38]

Nor can Plaintiff seek an injunction that would require a new treatment plant and a Y-U Crosscut plug. Such an injunction would be "mandatory" in nature and thus "particularly

---

[34] *Id*. Ex. O at BHMC_06560.
[35] *Id*. Ex. P.
[36] *Id*. Ex. W at BHMC_046826 (emphasis added).
[37] https://www.merriam-webster.com/dictionary/blue-sky.
[38] Fed. R. Civ. P. 37(c)(1).

**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS - 9**

disfavored."[39]  Moreover, "[t]he sole function of an action for injunction is to forestall future violations," not to undo a decades-old condition that became the status quo long ago.[40]

Plaintiff tries in vain to avoid CERCLA § 113(h).

> [W]here the EPA works out a plan, and a . . . suit "seeks to improve on the CERCLA cleanup" because [the plaintiff] "wants more," that constitutes interference.  Such a claim "would second-guess the parties' determination and thus interfere with the remedial actions selected."[41]

Plaintiff's tort claims fall squarely within the scope of § 113(h); they demand "more" than what EPA requires.  Under EPA decisions that balance the needs of human health and the environment against dewatering expenses, BHMC is allowed to maintain the water level in the Bunker Hill Mine near the 11 Level.  Plaintiff, however, wants the water removed well below the 11 Level, all the way down to the 23 Level, and from the 3.7-mile Y-U Crosscut and the entire Crescent Mine.  Plaintiff's claims for "more" than EPA orders require must be dismissed under § 113(h).

In addition to the above, BHMC incorporates the points and authorities in Placer's Reply Memorandum in Support of its Motion for Summary Judgment.

## CONCLUSION

For the reasons set for above and in prior briefing before this Court, BHMC respectfully requests that this Court grant its Motion.

---

[39] *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (*en banc*).
[40] *U.S. v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952); *Doe v. Snyder*, 28 F.4th 103, 112 (9th Cir. 2022) ("In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases . . . .'" (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009))); 13 Moore's Federal Practice – Civil § 65.02 ("The purpose of injunctive relief is to prevent future harm.").
[41] *Pakootas v. Teck Cominco Metals, Ltd.*, 646 F.3d 1214, 1220 (9th Cir. 2011) (footnote and citation omitted); *see also Hanford Downwinders Coalition, Inc. v. Dowdle*, 71 F.3d 1469, 1482 (9th Cir. 1995) (finding actions constitute a challenge to CERCLA cleanups where the plaintiff sought to dictate specific remedial actions).

**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS - 10**

DATED this 7th day of February, 2025.

                              HOLLAND & HART LLP

                              By: */s/Christopher R. Hogle*
                                   Christopher R. Hogle
                                   Sarah M. Perkins

                              By: */s/Christopher C. McCurdy*
                                   Murray D. Feldman
                                   Christopher C. McCurdy

                              *Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Bunker Hill Mining Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of February, 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Wade C. Foster<br>STOEL RIVES LLP<br>101 S. Capitol Boulevard, Suite 1900<br>Boise, ID  83702<br>wade.foster@stoel.com | Preston N. Carter<br>Morgan D. Goodin<br>GIVENS PURSLEY LLP<br>601 W. Bannock Street<br>P. O. Box 2720<br>Boise, ID  83701-2720 |
| Maren R. Norton *(Admitted pro hac vice)*<br>Sean T. James *(Admitted pro hac vice)*<br>STOEL RIVES LLP<br>600 University Street, Suite 3600<br>Seattle, WA  98101<br>maren.norton@stoel.com<br>sean.james@stoel.com | prestoncarter@givenspursley.com<br>morgangoodin@givenspursley.com<br><br>*Attorneys for Defendant,*<br>*Placer Mining Corporation* |
| James T. Graves *(Admitted pro hac vice)*<br>GRAVES ENVIRONMENTAL LAW PLLC<br>4736 NE 187th Place<br>Lake Forest Park, WA  98155<br>james@gravesenvirolaw.com<br><br>*Attorneys for Plaintiff* | |

                                                */s/ Christopher C. McCurdy*
                                                Christopher C. McCurdy
                                                for Holland & Hart LLP

34018124_v6

**REPLY IN SUPPORT OF BUNKER HILL MINING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON CRESCENT MINE, LLC'S CLAIMS** - 12