Wade C. Foster, ISB No. 11105
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: (208) 389-9000
Facsimile: (208) 389-9040
*wade.foster@stoel.com*

Maren R. Norton, admitted *pro hac vice*
Sean T. James, admitted *pro hac vice*
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Facsimile: (206) 386-7500
*maren.norton@stoel.com*
*sean.james@stoel.com*

James T. Graves, admitted *pro hac vice*
GRAVES ENVIRONMENTAL
LAW PLLC
4736 NE 187th Place
Lake Forest Park, WA 98155
Telephone: (206) 889-2330
*james@gravesenvirolaw.com*

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **CRESCENT MINE, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**BUNKER HILL MINING CORPORATION; PLACER MINING CORPORATION,** (d/b/a New Bunker Hill Mining Co.)**,**<br><br>Defendants. | Case No. 2:21-cv-00310-DCN<br><br>**PLAINTIFF CRESCENT MINE, LLC'S REPLY IN SUPPORT OF MOTION TO AMEND SECOND AMENDED COMPLAINT [DKT. 117]** |

Plaintiff Crescent Mine, LLC ("Crescent") hereby submits this Reply in Support of its Motion to Amend its Second Amended Complaint ("Motion").

## I. INTRODUCTION

Bunker Hill Mining Corporation's ("BHMC") and Placer Mining Corporation's ("Placer") responses in opposition to Crescent's motion to amend its Second Amended Complaint (ECF No. 51) highlight the inaccuracies and misrepresentations that are a consistent theme of their arguments, which only further underscore why punitive damages are warranted in this case. BHMC and Placer present an incomplete picture of the facts and make premature substantive damages arguments in an attempt to sidestep the fundamental issue: whether substantial evidence supports Crescent's motion to amend its complaint to add punitive damages. Crescent has shown sufficient evidence to support a reasonable probability of proving facts at trial to support an award of punitive damages. That is all that is required. I.C. § 6-1604(2); *Davis v. Blast Properties, Inc.*, 551 P.3d 706, 709 (Idaho 2024). Accordingly, Crescent respectfully requests that this Court grant the motion to amend to add punitive damages.

Regarding the addition of Crescent Silver, LLC ("Crescent Silver") and Syringa Exploration, Inc. ("Syringa") as plaintiffs, Crescent acknowledges potential procedural issues with Syringa maintaining a CERCLA § 107(a) claim and both Crescent Silver and Syringa asserting claims for trespass, nuisance, and negligence. Therefore, to avoid any procedural complications, Crescent hereby narrows the scope of its requested amendment to: (1) adding Crescent Silver as a co-plaintiff to Crescent's CERCLA claims, and (2) seeking punitive damages against Placer and BHMC.[1]

---

[1] Crescent can submit a revised proposed Second Amended Complaint if it will aid the Court in ruling on this motion.

Crescent Silver and Crescent Mine are closely related entities under common ownership and amendment is necessary only to reflect the full scope of costs Crescent Silver has incurred under CERCLA § 107(a), which include response costs beyond those incurred by Crescent Mine.[2] BHMC and Placer's arguments regarding prejudice overlook the fact that Crescent Silver's response costs are detailed in the expert report of Paul Rosasco;[3] Crescent Mine produced all documents responsive to discovery requests on behalf of both Crescent Mine and Crescent Silver; BHMC served Federal Rule of Civil Procedure ("FRCP") 30(b)(6) deposition notices for both Crescent Mine and Crescent Silver, and Roger Gross testified as a representative of both entities over two days. Crescent's proposed amendment is largely administrative and will not result in any new substantive issues, contrary to what BHMC and Placer contend. BHMC and Placer's claims of prejudice regarding adding Crescent Silver to the CERCLA claim are without merit. With respect to Crescent's diligence in seeking this amendment, Crescent asks only that this Court grant it the same liberal application of the amendment standard as BHMC requested in its motion to amend.[4]

## II. ARGUMENT

A.  **Punitive Damages**

1.  **Placer Admitted to Diverting Bunker Hill Mine Water with the Knowledge that the Crescent Mine Would Also Flood.**

As an initial matter, Placer vaguely alludes to the arguments contained in its motion for summary judgment to summarily assert that amendment is not warranted because Crescent's claims are purportedly not cognizable.[5] However, for the reasons set forth in Crescent's opposition

---

[2] *See* ECF No. 116-45 (Rosasco August Report) at 59-60, 66-74.
[3] ECF No. 116-45 (Rosasco August Report) at 59-60, 66-74.
[4] *See* BHMC Motion to Amend Answer to Crescent's Second Amended Complaint, ECF No. 99.
[5] Placer Brief, ECF No. 130 at 11, 17.

to Placer's motion for summary judgment, Placer's arguments do not warrant dismissal of Crescent's claims, much less establish that they are not cognizable as a matter of law.[6] Indeed, whether a claim is legally cognizable is determined under FRCP 12(b)(6) analysis. *Mendiono v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). As this Court already ruled, Crescent's state law claims against Placer are legally cognizable.[7]

Importantly, at this stage of the proceedings, the question is not whether this Court should award punitive damages, but only whether there is substantial evidence to support a reasonable likelihood of an award after a trial, such that Crescent may amend its pleadings. I.C. § 6-1604. This requires only that Crescent show sufficient evidence that could support such an award. *See Davis*, 551 P.3d at 709. Placer's admission that it diverted contaminated mine drainage away from the Central Treatment Plant ("CTP") to avoid payment obligations to the EPA, and its knowledge that this water would cross the Y-U crosscut and trespass into the Crescent Mine,[8] is more than adequate.

Placer's conduct while it owned the Bunker Hill Mine provides ample evidence to support an award of punitive damages under I.C. § 6-1604(2). Knowingly diverting toxic mine drainage away from a treatment plant to avoid paying EPA water treatment costs, despite the certainty of flooding a neighbor's property with that toxic drainage, provides a compelling case for punitive

---

[6] *See generally* Crescent Memorandum in Support of Motion for Partial Summary Judgment, ECF No. 116-1.

[7] Memorandum Decision and Order, ECF No. 49 at 20-21 (denying Placer's motion to dismiss Crescent's trespass, nuisance, and negligence claims against Placer). Crescent's state law claims against BHMC were dismissed without prejudice because BHMC did not own the Bunker Hill Mine at that time. *Id.* at 12-16. Crescent's Second Amended Complaint notes that BHMC completed its purchase of the Bunker Hill Mine in 2022. ECF No. 51 at 2.

[8] ECF No. 116-18 (L. Sala Dep. Transcript) at 80:23-81:23 ("It was a known fact that the Crescent Mine would flood if the Bunker Hill Mine quit dewatering.").

Plaintiff Crescent Mine, LLC's Reply in Support of Motion to Amend Second Amended Complaint [Dkt. 117] - 3
127848850.1 0065623-00004

damages.[9] The evidence shows that is exactly what happened here, including by Placer's own admission.[10]

It is telling that Placer leans on the demonstrably false theory that the Crescent Mine was *fully* flooded before Placer acquired full ownership of the Bunker Hill Mine in late April 1992—it is the only crutch Placer has.[11] But Placer's claims are directly refuted by contemporaneous accounts showing that the lower workings of the Crescent Mine were dry after the pumps were shut off in 1991, which would not be possible under Placer's theory.[12] Indeed, BHMC and Placer's own expert has opined that the water elevation in the Crescent Mine was approximately equal to the 18 Level of the Bunker Hill Mine in April of 1992 when Placer completed its purchase of the Bunker Hill Mine,[13] and then rose in unison with the water level in the Bunker Hill Mine throughout the period of Placer's intentional flooding.[14]

Next, Placer misconstrues EPA's 1991 Unilateral Administrative Order ("UAO"), by arguing that it was not subject to the UAO, that EPA's enforcement directives did not apply to it, and accordingly, that its diversions were perfectly acceptable.[15] But Placer is plainly bound by the

---

[9] *See Seiniger L. Off., P.A. v. N. Pac. Ins. Co.*, 145 Idaho 241, 249 (2008).

[10] ECF No. 116-7 (Bunker Hill Mine Water Management RI/FS) at 10; ECF No. 116-11 (Placer FRCP 30(b)(6) Dep. Transcript) at 4-77:16, 79:2-80:5, 120:12-121:22 (intentional diversion); ECF No. 116-14 (Stefanoff Dep. Transcript) at 100:19-23, 113:20-115:6, 168:16-24 (Crescent flooding); *see also* ECF No. 116-11 at 90:2-6, 90:19-91:18.

[11] *See* Placer Brief, ECF No. 130 at 12-13.

[12] ECF No. 133-14 (Durick Dep. Transcript) at 58:17-59:8 (explaining how he visited the 4100 level of the Crescent Mine with an EPA employee after the pumps had been shut off in 1991).

[13] ECF No. 116-13 (Morton July Report) at 79.

[14] *See* ECF 116-7 (Bunker Hill Mine Water RI/FS) at 10; ECF 129-5 (Morton 7/8/24 Report) at 84-89 (showing water in both mines rising from an elevation equal to the Bunker Hill 15 Level in October 1993 to an elevation just below the 11 Level in December 1994). *See also* Crescent Mine, LLC Reply In Support of Motion for Summary Judgment at 3-5, 7-9 (explaining how the contaminated water diverted into the Bunker Hill Mine by Placer necessarily flooded the Crescent Mine).

[15] *See* Placer Brief, ECF No. 130 at 13-14; Memo in support of Crescent Motion, ECF No. 117-1 at 4.

1991 UAO as a "successor" and/or "assign" of Bunker Hill Mining Co. (U.S.).[16] It strains credulity that EPA would order remediation of a site with a long, documented history of releasing hazardous chemicals to the environment but then not enforce such remediation on a new owner of the site. EPA's enforcement history spanning multiple decades and owners confirms this reality.

Moreover, whether the 1991 UAO explicitly required Placer to undertake remediation is beside the point. Rather, the UAO shows that Bunker Hill Mine's drainage was dangerous enough for EPA to issue a remediation order. Placer's aversion to paying treatment costs or taking any responsibility for its mine water stands in stark contrast to the importance that EPA placed on treating the Bunker Hill Mine water. Placer was so dedicated to avoiding EPA payments that it polluted its neighbor's property instead of cleaning up the mess at its own mine. *That* was Placer's outrageous conduct that supports allowing amendment to seek punitive damages. *See Davis*, 551 P.3d at 711.

Similarly, Placer argues that its conduct was not problematic because EPA's 1992 Record of Decision ("ROD") did not prohibit Placer from diverting water into the lower workings of the Bunker Hill Mine.[17] This is a significant mischaracterization of the 1992 ROD, which mandates "[a]ll acid mine drainage will be conveyed to the CTP . . . followed by further treatment in the constructed wetland treatments system."[18] The EPA has never authorized Placer to flood its neighbor's property in the process. Placer's strained reading of the ROD is also inconsistent with

---

[16] ECF No. 116-8 (1991 UAO) at 47.
[17] Placer Brief, ECF No. 130 at 14.
[18] ECF No. 112-26 (1992 ROD) at 94-95. Placer also grossly mischaracterizes James Stefanoff's testimony by omitting the question asked and Mr. Stefanoff's full answer: "Q. And EPA ordered Placer to route all acid mine drainage for treatment at the Central Treatment Plant; correct? A. Yes. They said route all the water that needs to be treated to the [CTP.]" ECF No. 129-9 (Stefanoff Dep. Transcript), at 234:4-9. The "water that needs to be treated" *is all* acid mine drainage.

Plaintiff Crescent Mine, LLC's Reply in Support of Motion to Amend Second Amended Complaint [Dkt. 117] - 5
127848850.1 0065623-00004

its conduct. Placer's argument that "the 1992 ROD prohibited Placer from discharging AMD *from the mine* without treatment at the CTP," is self-defeating because this is exactly what Placer did.[19] Placer diverted its mine water and allowed it to be discharged *from the mine*, across the Y-U Crosscut, and into the Crescent Mine. Thus, the question is not whether Placer was permitted to divert mine water, but rather whether it was proper for Placer to flood the Crescent Mine in order—as Placer admits was the motivation—to avoid paying EPA treatment costs.[20] The answer must be a resounding "no." The evidence of this diversion and corresponding flooding of the Crescent Mine, coupled with Placer's admitted intent of skirting its payment obligations to EPA, is more than sufficient evidence to establish the requisite "intersection of . . . a bad act and a bad state of mind." *Myers v. Workmen's Auto Ins. Co.*, 95 P.3d 977, 985 (Idaho 2004) (citation omitted). An amendment to add punitive damages is therefore appropriate.

Placer invokes a 1993 EPA letter which suggested a temporary option of diverting water into the Bunker Hill Mine as an option preferable to AMD spilling out the Kellogg Tunnell into the environment.[21] Plainly, the letter was not a license to trespass on neighboring properties, as EPA made explicitly clear in the letter.[22] Neither EPA's 1993 letter nor the lack of an EPA order directly naming Placer before 1994 grants Placer a license to trespass on neighboring properties.

### 2. BHMC Knowingly Made Unsupported Demands and Threatened Litigation to Bully Crescent and Negatively Impact the Value of the Crescent Mine.

BHMC also makes substantive arguments against the imposition of punitive damages. But again, the question here is not whether punitive damages should ultimately be awarded. Rather,

---

[19] Placer Brief, ECF No. 130 at 14.
[20] *Id.*, Ex. H (Placer FRCP 30(b)(6) Dep. Transcript), ECF No. 116-11 at 4-77:16, 79:2-80:5, 120:12-121:22.
[21] ECF No. 110-2, Ex. 10 at 1.
[22] *Id.* at 2 (cautioning that if Placer's actions impacted "land not owned by you," then "you must obtain permission of that landowner").

the question is only whether Crescent has shown sufficient evidence to allow it to amend its complaint to seek punitive damages. And again, there is ample evidence. Immediately after Crescent rejected BHMC's purchase offer, BHMC sent Crescent demand letters seeking payment for more than a quarter of what BHMC owes EPA.[23] BHMC internally acknowledged these demands had no basis in reality, and lacked factual support.[24] Despite this knowledge, BHMC repeated its baseless demands, attempting to coerce Crescent into a distressed sale.[25] BHMC then rushed to manufacture a basis for its demands but knew none existed.[26] BHMC argues that this evidence does not show outrageous conduct because it may not support a tortious interference claim.[27] But bullying, threatening, and intimidating conduct are not activities that are limited to tortious interference claims. Such conduct may arise in any situation where a small entity like Crescent is being unfairly treated by a larger one, like BHMC. This is the type of misconduct that punitive damages deter.

BHMC does not argue that there is insufficient evidence to support Crescent's request for punitive damages. Instead, BHMC admits its behavior, but attempts to reframe it as legitimate financial inquiries, rather than what it actually was: intimidation and bullying.[28] However,

---

[23] *Compare* ECF No. 116-24 (BHMC Demand Letter 2/3/2021) at 2, and ECF No. 116-54 (BHMC Second Demand Letter 3/11/2021) at 3, *with* ECF No. 116-21 (Settlement Agreement and Order on Consent for Response Action by BHMC), at 15; *see also* ECF No. 116-47 (BHMC Purchase Offer Letter) at 2.
[24] ECF No. 116-23 (Barnett Email to Moreen 3/11/2021); ECF No. 116-28 (4/2/2021 Williams Email) at 3.
[25] ECF No. 116-54 (BHMC Second Demand Letter 3/11/2021) at 3.
[26] ECF No. 116-25 (Barnett Email on Crescent Water Contribution 3/3/2021) at 2-8; ECF No. 116-27 (Email from Dr. Fairley 2/22/2021) at 2-4.
[27] BHMC Brief, ECF No. 134 at 14.
[28] *Id.* at 18.

Plaintiff Crescent Mine, LLC's Reply in Support of Motion to Amend Second Amended Complaint [Dkt. 117] - 7

BHMC's demands were wholly out of alignment with the facts of the water flow,[29] and the evidence shows that BHMC manufactured them primarily to exert undue leverage and impede Crescent's ongoing discussions with other entities interested in purchasing the Crescent Mine.[30] BHMC did not engage in a good-faith attempt to begin contribution negotiations, but instead—despite the facts—made demands to deflate the price of the Crescent Mine so that BHMC could make lowball offers on the mine.[31] The letters are egregious because of their scienter, not their content (which itself is absurd). This evidence demonstrates the bad state of mind that BHMC had in making its baseless demands. Indeed, during his deposition, BHMC's President and CEO was unable to identify any data or substantive evidence of any kind that supports BHMC's primary assertion in this litigation that Crescent is responsible for 40% of all water that exits the Bunker Hill Mine because there is none.[32]

Next, BHMC argues that its demands could not have been interpreted as bullying, threatening, or intimidating because of the civil nature of Crescent's response.[33] A civil response to an unfounded demand letter neither shows how Crescent interpreted the letters nor negates the letters' coercive intent. Indeed, Crescent was not aware of the full state of BHMC's bad faith until

---

[29] BHMC attempts to paint over this by claiming it was merely seeking contribution for Crescent's portion of BHMC's response costs. But the record shows this is false. BHMC's emails with its consultant, Barbara Ford, show that BHMC knew that its contribution claim had no basis, yet BHMC pursued it anyway. ECF No. 116-25 (Barnett Email 3/3/2021) at 2. Not only did BHMC pursue it, but BHMC demanded contribution costs from Crescent that would have (again, conveniently) erased BHMC's outstanding liability to EPA for its own mine water remediation. BHMC's demands were wholly untethered from reality, and it knew it.

[30] ECF No. 116-26 (2/3/2021 David Wiens Email) at 2.

[31] *See* ECF No. 116-28 (4/2/2021 Williams Email) at 3.

[32] Declaration of Maren R. Norton In Support of Crescent Mine LLC's Reply In Support of Motion To Amend Second Amended Complaint ("Norton Decl."), Ex. A (Ash Dep. Transcript) at 217:13-224:15.

[33] BHMC Brief, ECF No. 134 at 20.

after discovery and the production of the emails showing that BHMC knew that its claims were baseless, but it pursued them merely to pressure Crescent to sell.

Finally, BHMC's argument regarding the timing of its demands is without merit.[34] BHMC gained control of the Bunker Hill Mine in 2018.[35] BHMC made its unsupported demands for mine water treatment costs in 2021.[36] That BHMC's trespass liability was triggered in 2022 upon assuming ownership of the Bunker Hill Mine does not excuse its behavior while it was solely in control of the mine and its pumping apparatus. Indeed, it would not have been possible for BHMC to make its demands if it did not already have responsibility for pumping the Bunker Hill Mine.

**B.    Adding Crescent Silver as a Plaintiff**

As explained above, Crescent requests that this Court grant it leave to amend to add only Crescent Silver as a plaintiff, and only as to the CERCLA claims. Because the alternative is Crescent Silver potentially initiating its own action, amendment will ensure judicial economy, "avoid duplicative litigation, be an efficient use of judicial resources, and avoid potential conflicting results."[37] Crescent's timing in requesting this amendment is comparable to BHMC's request to amend its answer.

Placer and BHMC attempt to manufacture prejudice where none exists. Crescent is not seeking to expand Placer or BHMC's potential liability. There is no expansion of the factual record that requires further discovery or investigation. BHMC propounded discovery on all the Crescent parties concurrently. Importantly, both BHMC and Placer were served with Crescent Silver's initial discovery response stating that it did "not have any materials in its possession, custody, or

---

[34] *Id.* at 21.
[35] ECF No. 116-21 (Settlement Agreement and Order on Consent for Response Action by BHMC) at 15.
[36] ECF No. 116-24 (BHMC Demand Letter 2/3/2021) at 2.
[37] ECF No. 54 at 1-2.

control" that were responsive to BHMC's requests, "beyond the materials that Crescent Mine, LLC" produced.[38] Accordingly, Placer and BHMC have all of the relevant information that exists regarding this dispute for Crescent Silver.[39] Further, the Crescent parties' witness disclosure covered all three entities, and BHMC served FRCP 30(b)(6) deposition notices for both Crescent Mine and Crescent Silver, and Roger Gross testified on behalf of both entities.[40] Forcing Crescent Silver to file a separate suit, as Placer and BHMC would have Crescent do, would result only in production of the same documents and present the same experts and employees for deposition; it would waste both the parties' and this Court's time.[41]

### IV. CONCLUSION

There is substantial evidence showing that Crescent has a reasonable probability of proving facts at trial to support an award of punitive damages. Crescent has shown sufficient evidence that Placer deliberately diverted toxic mine water to avoid paying EPA treatment costs and knowingly flooded the Crescent Mine, and that BHMC made baseless demands on Crescent only as a coercive tactic for leverage. Neither BHMC nor Placer would suffer prejudice from adding Crescent Silver to the CERCLA claims because discovery has already been conducted and all relevant documents and witnesses produced and deposed. Accordingly, Crescent respectfully requests leave to amend.

---

[38] Norton Decl., Ex. B (Crescent Silver's Responses to BHMC's Discovery Requests) at 6.
[39] ECF No. 116-45 (Rosasco August Report) at 59-60, 66-74.
[40] Norton Decl., Exs. C & D (BHMC's FRCP 30(b)(6) Dep. Notices); ECF No. 110, Ex. 28 (Gross 30(b)(6) deposition) at 11:15-23.
[41] Likewise, BHMC's argument that Crescent's claims are not ripe is unavailing. *See Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 893 (9th Cir. 1986) (explaining government enforcement actions were not prerequisite for ripeness); *Cal. ex. rel. Cal. Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 668 n.4 (9th Cir. 2004) (holding a plaintiff has a right to sue for response costs "[a]s soon as the [plaintiff] expended its first dollar").

DATED this 7th day of February 2025.

        STOEL RIVES LLP

        <u>/s/Maren Norton</u>
        Wade C. Foster, ISB No. 11105
        Maren R. Norton, admitted *pro hac vice*
        Sean James, admitted *pro hac vice*
        Attorneys for Plaintiff