Wade C. Foster, ISB No. 11105
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: (208) 389-9000
Facsimile: (208) 389-9040
wade.foster@stoel.com

Maren R. Norton, admitted *pro hac vice*
Sean T. James, admitted *pro hac vice*
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Facsimile: (206) 386-7500
maren.norton@stoel.com
sean.james@stoel.com

James T. Graves, admitted *pro hac vice*
GRAVES ENVIRONMENTAL
LAW PLLC
4736 NE 187th Place
Lake Forest Park, WA 98155
Telephone: (206) 889-2330
james@gravesenvirolaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **CRESCENT MINE, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**BUNKER HILL MINING CORPORATION; PLACER MINING CORPORATION,** (d/b/a New Bunker Hill Mining Co.),<br><br>Defendants. | Case No. 2:21-cv-00310-DCN<br><br>**DECLARATION OF ROGER GROSS IN SUPPORT OF CRESCENT PARTIES' REPLY ON ITS MOTION FOR SUMMARY JUDGMENT** |

I, Roger Gross, state and declare as follows:

1. I have personal knowledge of and am competent to testify to the matters stated herein.

2. I am the President and CEO of Crescent Silver, LLC., Syringa Exploration, Inc., and Crescent Mine, LLC, (collectively, the "Crescent Parties").

DECLARATION OF ROGER GROSS IN SUPPORT OF CRESCENT PARTIES' REPLY ON MOTION FOR SUMMARY JUDGMENT - 1
127797543.7 0065623-00004

A.   **Emails in 2020**

3.   I am aware that Bunker Hill Mining Corporation ("BHMC") and Placer Mining Corporation ("Placer"), (collectively, "Defendants") stated the following in their joint Opposition to the Crescent Parties' Motion for Partial Summary Judgment (ECF No. 129) ("Joint Opposition"):

> In a July 2020 email, the CEO, Roger Gross, told his boss, Martin Hale, that he "[doesn't] know why they [meaning BHMC] have not come after us already for our portion of the water treatment plant costs. . . . This is the one that keeps me up at night." In the same email exchange, Mr. Gross also wrote that he is "just concerned that [BHMC representatives] are going to bring the historical water issue to the forefront and try and make us pay our share of the water treatment costs."
> The Crescent Parties are not nearly as candid with the Court as Mr. Gross was to his boss.

Joint Opposition at 1-2.

4.   It is true that I wrote the July 2020 email as stated above. However, in the year between this July 2020 email and the Crescent Parties coming to the Court, I researched and learned more about the facts and history of the flooding of the Crescent Mine and the Bunker Hill Mine in the early 1990s and concluded that my understandings and assumptions reflected in the July 2020 email quoted by the Defendants were more complex than my original understanding.

5.   At the time of my July 2020 email to Mr. Hale, I did not know the full extent to which the Bunker Hill Mine had flooded the Crescent Mine. I also did not understand the hydraulic relationship between the two mines as well as I do today. But, more fundamentally, as stated in my July 2020 email to Mr. Hale, I recognized that BHMC had committed to pay the U.S. Environmental Protection Agency millions of dollars and would likely try to shift a portion of its obligation to Crescent irrespective of whether the Crescent actually contributed to Bunker Hill Mine water treatment costs or not.

DECLARATION OF ROGER GROSS IN SUPPORT OF CRESCENT PARTIES' REPLY ON MOTION FOR SUMMARY JUDGMENT - 2
127797543.7 0065623-00004

6.  I also did not know in July 2020 how little water the lower Crescent Mine produced, less than 10 gallons per minute according to Bob Schlosser, former Crescent Mine manager, relative to the hundreds of gallons per minute that now flow, and historically flowed, into the lower Bunker Hill Mine. I also did not know in July 2020 the details of the deliberate diversions of acid mine drainage ("AMD"), which would otherwise flow by gravity to the Central Treatment Plant, into the lower Bunker Hill Mine in the 1991-1994 period, including by Placer from late October 1993 through November 1994.

7.  Defendants' accusation that "[t]he Crescent Parties are not nearly as candid with the Court as Mr. Gross was to his boss" is wrong, and Defendants know that assertion is wrong. Specifically, Defendants know that my statements in the July 2020 email do not represent my, or the Crescent Parties', current understanding of the facts because I discussed this very July 2020 email during my deposition. I repeatedly explained to counsel for Defendants that my understanding reflected in the email was predicated on my assumptions at the time that were based on incomplete information. ECF No. 110, Declaration of Preston Carter ("Carter Decl."), Ex. 28 (Gross 30(b)(6) deposition) at 141:18-19, 24-25, 137:12, 143:7-12, 144:22.

**B.  Assertions Regarding Experts' Tour of Crescent Mine in April 2024**

8.  Defendants assert that "[t]he Crescent [Mine] has scores of unplugged exploration drill holes that allow water to infiltrate its lower levels," and they provide the following photo, alleging it to be one such hole:



Joint Opposition at 7-8.

      9.      In Dr. Kym Morton's Declaration in Support of Defendants' Joint Opposition, she states the same allegations (and provides the same photo) as those described above. In addition, Dr. Morton states the following:

> Between 1942 and 1985, 167 exploration core holes were drilled at Crescent Mine. 107 drill holes were completed by SNS Silver Corp and UMG between 2008 and 2009. In 2011, another eleven core holes were drilled and in 2014 a further two core holes were drilled. The exploration core holes were drilled from surface and within the mine.
>
> These open, unsealed core holes (of about 3 inches diameter) carry water from surface into the Crescent Mine workings, as can be seen in the photograph below that I took during a tour of the Crescent Mine in April 2024. During the tour, Crescent Silver LLC's CEO, Roger Gross, said that one of the open exploration holes continually flowed at 5 gpm into the mine, and despite much effort they had been unable to seal it (see photograph below taken during the 2024 Crescent Mine visit).

ECF No. 129-003 (Morton Decl. in Support of Joint Opposition) at ¶¶ 39-40.

DECLARATION OF ROGER GROSS IN SUPPORT OF CRESCENT PARTIES' REPLY ON MOTION FOR SUMMARY JUDGMENT - 4
127797543.7 0065623-00004

10. Crescent Silver's records show that approximately 167 drill holes were completed by a prior owner between 1942 and 1985. However, I have not personally seen one drill log showing that these drill holes were drilled <u>from the surface</u> during the time-period. Instead, based on the drill logs in the Crescent files these holes were drilled from underground workings and, to my knowledge, did not reach the surface.

11. Dr. Morton is correct in stating that 107 drill holes were completed by SNS and UMS, but 37 of these drill holes were drilled from underground workings and did not intercept the surface. To the best of my knowledge, the remaining 70 drill holes that were drilled from the surface were grouted over the entire length of the hole. There was only one hole that was not grouted, due to technical issues, and that hole was capped at the collar, meaning that it was capped at the surface. Dr. Morton's statement that all of the drill holes were drilled from the surface is not correct. The eleven other drill holes mentioned by Dr. Morton were drilled in 2011 and consisted of nine surface core holes that were also grouted and two underground holes in the Hooper Tunnel that did not reach the surface.

12. Dr. Morton also states that I told her an exploration hole was making five (5) gallons per minute as shown in her photo, included above. However, the hole in the picture is not, in fact, an exploration hole, but a rock bolt hole. And I did not tell Dr. Morton that we tried to seal this hole, as it is just a four (4) foot rock bolt hole for roof support.

13. I told Dr. Morton that I had not measured the flow from the bolt hole. However, I believe she was the one who guessed the flow to be 5 gallons per minute.

14. Furthermore, the photo does not provide any evidence of holes in the Crescent Mine that "allow water to infiltrate its *lower* levels," as stated in the Joint Opposition. Joint Opposition at 8 (emphasis added). The photo was taken in the upper part of the upper Crescent Mine, inside

from the Countess Portal. Water infiltrating the Countess workings *does not reach*, and *never has reached*, the lower levels of the Crescent Mine (i.e., any portion of the mine below the Hooper Tunnel level). First, the Countess workings are not connected to the Hooper Tunnel or Big Creek #4 Tunnel, both of which are lower than the Countess workings but still within the upper Crescent Mine. The Countess Portal is approximately 1,000 vertical feet above the Big Creek #4 Tunnel and 1,500 vertical feet above the Hooper Tunnel. Second, water infiltrating into the Countess workings is pumped back up to the Countess Portal, where it is land-applied. This has been the case since 2010 when the Countess workings were first driven. Third, even if any water managed to seep from the Countess to Hooper Tunnel or Big Creek #4 Tunnel, it would still not reach the lower Crescent Mine because water from those two Upper Crescent tunnels is conveyed by force of gravity via ditches out of the Crescent Mine at or above the Hopper Tunnel level; and this has been the case for all years at issue in this litigation.

15.     Further, up until the last couple years, all such Upper Crescent water was conveyed to the Sunshine Mine tailings impoundment, pursuant to a 1973 agreement, to be treated and discharged along with that mine's water. In the last couple years, all such water has been land-applied in areas upslope of either Big Creek or the South Fork of the Coeur d'Alene River. A photo of water infiltrating into the Upper Crescent's Countess workings shows absolutely nothing with respect to water infiltrating into the lower workings of the Crescent Mine because that water has no way to reach the *lower* Crescent mine, and in no way conflicts with the numerous documents and testimony of former mine workers that all consistently stated that the lower Crescent Mine (prior to flooding with Bunker Hill Mine water) was notably "dry," subject to only about 10-30 gpm of infiltration.

### C. Crescent Mine, LLC Incurred Costs

16. Crescent Mine, LLC, was billed approximately $80 by The Rental Store for equipment rented to prepare for sampling the water in the Ellis Shaft. Crescent Mine, LLC, had the legal obligation for this cost. Crescent Mine, LLC was also billed approximately $2,900 by MineFab, LLC, for supplies to rehabilitate the Hooper Tunnel in order to allow safe access to the collar of the Ellis Shaft (within the Hooper Tunnel) to prepare for sampling the water in the Ellis Shaft.

### D. Spreadsheets of Crescent Costs

17. Defendants' statements that (1) "no one wants to own the summary [of Crescent's costs] that [Crescent] has presented," and (2) Mr. Rosasco "disclaims" the summary of costs referenced in my December 2024 declaration are also inaccurate. Joint Opposition at 40. Ann Sluka, an employee of Crescent Silver, created the spreadsheet of costs, which Mr. Rosasco reviewed to prepare a summary of the costs that he deems necessary under CERCLA and consistent with the National Contingency Plan ("NCP"). Based on Mr. Rosasco's review, the original spreadsheet prepared by Ann Sluka was changed, including a deduction of certain costs that Mr. Rosasco considered to be not necessary and NCP-consistent. The result was a modified version of the spreadsheet that summarizes the costs that Mr. Rosasco considers to be recoverable CERCLA response costs. Mr. Rosasco has never "disclaimed" the summary of costs referenced in my December 2024 declaration. The summary of costs has simply been refined with input from Mr. Rosasco.

### E. Crescent Continues to Implement its Sampling and Analysis Plan

18. The Crescent Parties have begun implementing the Sampling and Analysis Plan ("SAP") prepared by Haley & Aldrich. Specifically, water in the Ellis Shaft in the lower Crescent Mine, below the Hooper Tunnel, was measured for various water quality parameters. Some

DECLARATION OF ROGER GROSS IN SUPPORT OF CRESCENT PARTIES' REPLY ON MOTION FOR SUMMARY JUDGMENT - 7
127797543.7 0065623-00004

measurements were taken in late July 2024, and others have been taken more recently (at the end of 2024). The Crescent Parties are also continuing to monitor and measure the water level in the Ellis Shaft on an hourly basis.

19. The sampling, measuring, and data collection described above will advance the effort of investigating the nature and extent of the contaminated water in the lower Crescent Mine. Together with what we understand to be ongoing data gathering by BHMC in the Bunker Hill Mine, such efforts will also help to more definitively determine whether the Y-U Crosscut is indeed open or not. Knowledge of the status of the Y-U Crosscut is essential for remediation planning because dewatering the lower Crescent Mine on its own (if the Y-U is sealed) presents a very different set of facts, challenges, and costs compared to the prospect of addressing the contaminated water in the lower Crescent Mine while it remains hydraulically connected to the lower Bunker Hill Mine if the Y-U is open.

20. If the Y-U is open, options include pumping down the conjoined mine pool far enough to seal the Y-U Crosscut in an unflooded state or sealing the Y-U even while it is flooded. Crescent's development and implementation of the SAP and its other investigative efforts thus far are necessary for later stages of the cleanup process.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

DATED this 7th day of February 2025.

Roger Gross

DECLARATION OF ROGER GROSS IN SUPPORT OF CRESCENT PARTIES' REPLY ON MOTION FOR SUMMARY JUDGMENT - 8
127797543.7 0065623-00004