UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CRESCENT MINE, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>BUNKER HILL MINING<br>CORPORATION; and PLACER MINING<br>CORPORATION (d/b/a New Bunker Hill<br>Mining Co.),<br><br>          Defendants. | Case No. 2:21-cv-00310-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court currently are eight different motions separated into three types: (1) two motions to amend pleadings; (2) three summary judgment motions;  and (3) three motions to seal portions of the record. On June 23, 2025, the Court held oral argument only on the three summary judgment motions but took all motions under advisement.[1] This decision addresses the two motions to amend the pleadings and the three motions to seal. The summary judgment motions will be addressed in a separate decision that will come out shortly. There are two consolidated cases, 2:21-cv-00310-DCN and 2:21-cv-209-DCN.[2] Unless stated otherwise in this decision, each motion falls under 2:21-cv-00310-DCN.

---

[1] The motions to amend and to seal will be decided on the briefs without oral argument.

[2] 21-cv-00310 is Crescent Mine, LLC's suit against Bunker Hill Mining Corp. and Placer Mining Corp. It is Crescent Mine LLC's suit to recover response costs pursuant to CERCLA and for state law claims

(continued)

MEMORANDUM DECISION AND ORDER - 1

Upon review, and for the reasons set forth below, BHMC's Motion to Amend/Correct its Answer is **granted**, Crescent Mine's Motion to Amend/Correct the Amended Complaint is **denied**, Bunker Hill's two Motions to Seal are **granted**, and Placer Mining's Motion to Seal is **granted**.

## II. BACKGROUND

The Court set forth the facts of this case previously. Dkt. 49. They will not be set forth here again unless additional facts are necessary for particular motions.

## III. LEGAL STANDARD

### A.     Motion to Amend

When the Court's deadline for amending pleadings and joining parties has passed, a party seeking leave to amend a pleading must show "good cause" for amendment pursuant to Federal Rule of Civil Procedure 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking amendment. *Id.* at 609. Although prejudice to the opposing party may also be considered, the focus of the inquiry is on the movant's reason for seeking amendment. *Id.* "If that party was not diligent, the inquiry should end." *Id.*

If a party seeking amendment establishes good cause pursuant to Rule 16(b), that party must then demonstrate that amendment is proper under Rule 15(a). *Id.* at 608. Rule 15(a)'s liberal amendment policy focuses on prejudice to the opposing party and the bad

---

pertaining to Crescent Mine. 21-cv-209 is Bunker Hill Mining Corp. suit against Northstar Energy, Crescent Mine LLC, Syringa Exploration, and Crescent Silver LLC. It is Bunker Hill Mining Corp.'s suit to recover response costs pursuant to CERCLA for the release or threatened release of hazardous substances into the environment from Crescent Mine. The two cases were consolidated in 2022 pursuant to stipulation. Dkt. 40 (Case 21-cv-209) and Dkt. 54.

MEMORANDUM DECISION AND ORDER - 2

faith, if any, of the party seeking leave to amend. *Id.* at 609; *Barden v. Goodsell,* 2022 WL 11734742, at *3 (D. Idaho 2022). Rule 15(a)'s policy—which requires courts to grant leave to amend "freely" as justice so requires—must be applied "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). The underlying purpose of Rule 15 is to facilitate a decision on the merits, rather than on the pleadings or technicalities. *Stanton v. Battelle Energy Alliance, LLC.,* 83 F.Supp.3d 937, 948 (D. Idaho 2015). The decision whether to grant or deny a motion to amend pursuant to Rule 15(a) is in the sole discretion of the trial court. *Id.* at 949.

The Court is to consider five factors when determining under Rule 15 whether leave to amend should be granted: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint.[3] *In re W. State Wholesale Nat. Gas Antitrust Litig.,* 715 F.3d 716, 738 (9th Cir. 2013).

### B.    Motion to Seal

Generally, Courts recognize a public right to "inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 n.7 (1978). In fact, there is a strong presumption in favor of access to judicial records. *Center for Auto Safety v. Chrsyler Group, LLC,* 809 F.3d 1092, 1096 (9th Cir. 2016). However, public access to judicial records is not absolute. *Kamakana v. City &*

---

[3] Some courts do not include prior amendment of the complaint as a factor, making four factors to consider. *See, e.g., DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Lemar v. CVS Pharmacy, Inc.,* 2014 WL 12725107 (C.C. Cal. 2014).

MEMORANDUM DECISION AND ORDER - 3

*Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

The presumption in favor of public access to judicial records that relate to a dispositive motion may be overcome where there is a "compelling reason" to keep the subject materials confidential. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097-98 (9th Cir. 2016); quoting *Kamakana,* 447 F.3d at 1178. The compelling reason standard allows a court to seal records only when it finds a compelling reason and articulates the factual basis for its ruling, without relying on hypothesis or conjecture. *Kamakana,* at 1179. The court must then "conscientiously balance[ ] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* Whether a compelling reason exists is a matter for the court to determine in its discretion based upon the facts and circumstances of a particular case. *Nixon,* 435 U.S. at 599.

The common-law presumptive right of inspection has bowed before the court's power to insure that records are not used as sources of business information that might harm a litigant's competitive standing. *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) quoting *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598, (1978).

## IV. DISCUSSION

### A.    Motions to Amend

#### 1.    *BHMC's Statute of Limitations Defense*

BHMC moves to amend its Answer to Crescent's Second Amended Complaint and to Crescent's Counterclaim.[4] Dkt. 99. BHMC seeks to add an affirmative defense based on

---

[4] Crescent Mines Counterclaim is in Case No. 2:21-cv-00209-DCN.

MEMORANDUM DECISION AND ORDER - 4

the statute of limitations. Dkt. 99-1, p.2. The Court's Scheduling Order provided that November 15, 2022 was the deadline for amended pleadings. BHMC's filed its motion to amend on July 15, 2024, eighteen months after the deadline. This means that the Court's analysis here must begin with Rule 16(b).

While the First Amended Complaint was the operative Complaint, the Court ruled on Defendants' Motions to Dismiss. Dkt. 49. Generally, that ruling dismissed all claims against BHMC without prejudice but allowed Crescent to file an Amended Second Complaint. Crescent filed an Amended Second Complaint on April 1, 2022. Dkt. 51. It is the current operative pleading. The Second Amended Complaint contains the same seven causes of action as the First Amended Complaint. However, Crescent has added factual allegations in an attempt to bring BHMC back into each cause of action.

BHMC filed its Answer to the Second Amended Complaint on May 20, 2022. Dkt. 56. BHMC also filed its Answer to Crescent's Counterclaim in 21-cv-310 on that same day. Dkt. 57. BHMC did not include a statute of limitations defense in its pleadings.

Crescent provided an expert opinion long after the deadline for amending pleadings had passed. Dkt. 102, Ex. 11. The report is dated June 7, 2024. Dkt. 102, Ex. 11, ¶ 12. A portion of that report was filed on August 5, 2024. Dkt. 102, Ex. 11. BHMC claims that this expert opinion creates a new basis for liability, which gives rise to a statute of limitations defense.

The expert report from Paul Rosasco, that BHMC claims may move the accrual date earlier as to it, focuses on "issues concerning the source of the quantity and quality of water flowing from Kellogg Tunnel at the Bunker Hill Mine and the sources of water present in

MEMORANDUM DECISION AND ORDER - 5

the mine workings of both the Bunker Hill and Crescent mines." Dkt. 102, Ex. 11, p.1. His report identifies six opinions he intends to provide at trial. They are summarized in his report and here:

A. From 1991 to 1994, Crescent Mine flooded with water from Bunker Hill Mine twice due to Bunker Hill Mine water pumps being turned off.
B. The majority of water and AMD that has exited the Kellogg Tunnel since about 1995 comes from prior flooding of the Bunker Hill Mine and ongoing infiltration of precipitation and surface water into the Bunker Hill Mine.
C. The Crescent Mine produces substantially less water and AMD than the Bunker Hill Mine.
D. The natural inflow of water into the Lower Crescent Mine has a range from 10 to 25 gallons per minute and is most likely 15 to 16 gallons per minute.
E. Since 1995, water potentially drawn into the Bunker Hill Mine from the Crescent Mine due to pumping would likely be less than 1% of the total flow discharging from the Kellogg Tunnel.
F. Crescent has incurred costs for CERCLA response actions consistent with the National Contingency Plan.

BRMC claims that these opinions may extend the accrual date against it back earlier than September 2022. However, only part of Rosasco's Report was initially filed by Crescent, so the Court must assume that is the portion of the Report BRMC relies upon. That portion of the report states the water that enters the Bunker Hills Mine either naturally flows out of the Kellogg Tunnel or is diverted down into the lower levels of the mine and then is pumped up to 9 Level where it is discharged out the Kellogg Tunnel. Rosasco then states that he reviewed data in the record that gives the range of discharge for various times, including 2013 to 2020, 2021 to 2023, 2023 to 2024, and 2000 to 2020.

BHMC recognizes that Crescent originally alleged the BHMC's liability "arose from failing to remove water after BHMC leased the Bunker Hill Mine in 2017 and acquired it in 2022." Dkt. 99-1, p. 2. BHMC then concludes that Rosasco's report further

MEMORANDUM DECISION AND ORDER - 6

"opines that water has been moving back and forth between Bunker Hill Mine and Crescent Mine." Id. It is this opinion about water moving back and forth that gives rise to Bunker Hill's potential liability.[5] Stagnant water sitting in Crescent Mine that moved from the Bunker Hill Mine to Crescent Mine before BHMC took control of the mine cannot create liability for BHMC. However, moving water that flows back and forth since BHMC took control of the mine might create liability. To the extent that Rosasco's report may present a new theory of liability beyond what is alleged in the Second Amended Complaint, that theory may be subject to a new statute of limitation defense. Therefore, the Court finds good cause under Rule 16(b) for BHMC's delay in raising the affirmative defense of the statute of limitations. There was no reason to assert that defense prior to the expert's report.

Next, the Court must turn to Rule 15. The only change BHMC wishes to add is one sentence to its Answer that raises the statute of limitations as an affirmative defense. As stated above there are five factors to be considered under Rule 15(a).

      a.      <u>Bad Faith</u>.

Crescent does not address this factor. The Court finds no bad faith.

      b.      <u>Undue Delay.</u>

Undue delay does not exist here because BHMC moved quickly to amend its Answer once the theory of water flowing back and forth between the mines was asserted.

---

[5] Prior to this report, Crescent blamed the water flowing from Bunker Hill Mine to Crescent Mine on the shutdown of the pumps in Bunker Hill Mine and the diversion of AMD to lower levels of the Bunker Hill Mine. See Dkt. 51, p. 5-6, ¶¶ 18-19. This occurred long before Bunker Hill controlled the mine. See also, Dkt. 51, p. 22, ¶ 93 ("A continuing migration of contamination from a defendant's property to a plaintiff's is not required for a continuous trespass. The migration can be complete, and the trespass still be of a continuing nature."

MEMORANDUM DECISION AND ORDER - 7

Although Crescent Mine did claim a continuous tort of trespass, it also argued that the movement of water ended before BHMC controlled the mine and it was the failure to abate the situation that created BHMC's liability.

### c.        Prejudice.

Although Crescent Mine argues that the facts upon which the proposed amendment is based existed at the time BHMC filed its Answer, that is not accurate. All of the facts identified by Crescent Mine to support this argument only go to identifying the trespass as a continuing trespass caused by the continued water sitting in the Crescent Mine. It is the claim of contaminated water that flowed into Crescent Mine while BHMC controlled Bunker Hill Mine that is identified in the Second Amended Complaint. Along with the fact that BHMC has done nothing to abate the situation of standing water. Now, Crescent Mine's expert is suggesting that water continues to flow from Bunker Hill Mine into Crescent Mine and back again. Under that recent allegation, any prejudice would run towards BHMC if an amendment is not allowed.

### d.        Futility.

This is Crescent Mine's strongest factor. It argues that any recent flooding would not be subject to the statute of limitations, so the amendment is unnecessary. However, that gives rise to the issue of whether the "new" theory of ongoing flooding would relate back to the date of the original Complaint. Arguably, the date of the Second Amended Complaint may determine the accrual time for the statute of limitations. This will need to be more fully developed in subsequent pleadings. The Court simply cannot say at this time that the amendment would be futile.

MEMORANDUM DECISION AND ORDER - 8

e.    Prior Amendments.

BHMC has not previously moved to amend its Answer. Likewise, the fact that BHMC did not seek to include an amendment of pleadings extension in any of the discovery deadline extensions is not dispositive. BHMC had no reason to seek to amend until the new factual theory came into existence.

Applying both Rule 16(b) and 15, BHMC's motion to amend is **granted**.

### 2.    *Crescent's Additional Parties and Claim for Punitive Damages*

Crescent moves to amend its Second Amended Complaint to assert a claim for punitive damages against defendants and to add two new plaintiffs. Dkt. 117. The new plaintiffs would be Crescent Silver, LLC, and Syringa Exploration, Inc.[6]

a.    Adding New Plaintiff Parties.

Once again, the Court's Scheduling Order provided that November 15, 2022 was the deadline for amended pleadings. Crescent's motion was filed on December 2, 2024. This means that the Court's analysis on adding two new plaintiffs must begin with Rule 16(b). Crescent must show "good cause" for adding these new parties. Crescent, Crescent Silver, and Syringa are "interrelated corporate entities." Dkt. 117-1, p. 9. Roger Gross is the CEO of all three entities. Id. BHMC sued all three entities in the stipulated consolidated case.

Crescent argues that the fact that the two new parties are already parties in the

---

[6] These two parties are already parties in the consolidated case, Case No. 2:21-cv-00209-DCN. However, they appear there as defendants. They have never made their own claim to recover costs under CERCLA or state law claims.

MEMORANDUM DECISION AND ORDER - 9

stipulated consolidated case makes it clear that there will be no prejudice to Placer and BHMC. Crescent makes its argument only under Rule 16 with no mention of Rule 15.[7]

Placer and BHMC argue that Crescent waited two years beyond the deadline to move to amend its Complaint and six months beyond the discovery deadline to add the two new parties. Dkt. 130, p. 3. Additionally, they argue that prejudice is clear because neither has had an opportunity to conduct discovery against the two new entities. Discovery against plaintiffs would certainly differ from discovery against defendants.

The good cause inquiry under Rule 16(b) primarily considers the diligence of the party seeking the amendment and that party's reasons for seeking modification. *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992). Although the existence or degree of prejudice to the opposing party might supply additional reasons to deny a motion to amend, if the moving party was not diligent, the inquiry should end. *Id.* Here, Crescent makes an argument regarding lack of prejudice, but makes no argument or explanation regarding diligence. It merely states that its purpose in adding the new parties is to align the pleadings in this case with those in the consolidated case to "ensure that the parties associated with the Crescent Mine are accurately reflected in the lead case." Dkt. 117-1, p. 16. That could have been done long before the deadline to amend pleadings or the close of discovery. It was not. Nor has Crescent attempted to explain the delay. It is not defendants' duty to determine why the new entities were not a part of this case from the outset. It is Crescent's duty to show diligence, which it has not. Crescent's failure to meet

---

[7] Crescent's motion does mention that it is moving under Rule 15 and 16, but its memorandum in support of the motion does not discuss Rule 15.

the requirements of Rule 16 stops this analysis without reaching the requirements of Rule 15. This portion of Crescent's motion must be **denied**.

b.     Adding a Claim for Punitive Damages.

Crescent also seeks to add a claim for punitive damages against Placer and BHMC. Crescent argues that Placer and BHMC's conduct was oppressive, malicious, and outrageous and was a willful disregard of Crescent's property rights. Idaho law allows a claim for punitive damages, but that claim cannot be pled in the complaint. I.C. § 6-1604. Instead, it must be brought later in the case. Here, Crescent has properly followed that requirement and has filed a motion to seek punitive damages. In ruling on this portion of Crescent's motion to amend, I.C. § 6-1604 must be used rather than Rules 16 and 15. *Davis v. Blast Properties,* 551 P.3d 706 (Idaho 2024).

Punitive damages are not favored in the law and the authority to award such damages should be exercised with caution. Id. at 708 (2024). In its present form, I.C. § 6-1604 caps punitive damages, limits the types of misconduct which will support a punitive damages award, sets a clear and convincing evidence burden of proof at trial, and sets the standard to amend a pleading to include a prayer for relief seeking punitive damages. *Id.* at 708-09. Traditionally, under both state and federal rules of civil procedure, motions to amend pleadings are liberally granted. *Id.* at 709. However, I.C. § 6-1604(2) sets a higher bar for parties seeking to amend their pleading to add punitive damages. *Id.* at 709. The Idaho Supreme Court recognized that the "trial court plays a vital gatekeeping role under section 6-1604(2)." "Instead of simply examining the language of the proposed amended pleading when determining whether to grant a motion to amend, subsection (2) requires

MEMORANDUM DECISION AND ORDER - 11

the trial court to 'weigh' the evidence presented by the moving party in support of its motion and determine, after a hearing on the motion, whether there is a 'reasonable probability' of 'proving facts at trial' which are 'sufficient' to support an award of punitive damages." *Id.* at 709.[8] This means the trial court must assess whether the evidence submitted by the moving party is admissible at trial and sufficient to support an award of punitive damages. *Id.*

Here, Crescent asserts that Placer intentionally diverted metals-laden acid mine drainage ("AMD") into the lower workings of the Bunker Hill Mine to avoid paying treatment costs to the EPA, while knowing full well that its actions would cause flooding in the Crescent Mine. Crescent further asserts that once BHMC took over ownership of the mine it had a duty to remove the trespassing AMD. However, there is evidence that Placer acted under the direction of the EPA, which approved the water diversions. The evidence against BHMC is scant at best.

The Court cannot determine, at this time, as a matter of law that it is appropriate to instruct the jury on punitive damages. This portion of Crescent's Motion to Amend is denied without prejudice. The Court will wait until the evidence comes in at trial to decide whether punitive damages can be recovered.

### B.    Motions to Seal

Placer filed a motion to seal documents pertaining to its own summary judgment

---

[8] The Davis court specifically held that "after a hearing on the motion" does not mean the court must "conduct a full-blown evidentiary hearing prior to trial." *Id.* Instead, "weighing the evidence" requires a determination of whether there is a reasonable probability of proving facts at trial that are sufficient to support an award of punitive damages.

motion. Dkt. 109.[9] BHMC filed a motion to seal multiple documents pertaining to its own summary judgment motion. Dkt. 113.[10] BHMC also filed a motion to seal multiple documents pertaining to its opposition to Crescent's summary judgment motion. Dkt. 131.[11] Crescent filed a Response to both Placer and BHMC's original motions to seal. Dkt. 126. Crescent has also filed a Response to BHMC's second motion to seal. Dkt. 136. Crescent does not argue against sealing these documents completely. Instead, it suggests that there should be a sealing of only portions of these records or redactions made to the records.

There is already a Protective Order in this case that is based upon the Joint Motion for Entry of Stipulated Protective Order signed by all parties. Dkt. 65 & 66. The Court has reviewed all the documents identified in the three motions to seal and finds they fall within the material the parties sought to protect with the stipulated Protective Order. This is a compelling reason for granting the motions to seal. For the most part they are financial records or trade secrets of a party. Additionally, the Court has conscientiously balanced the competing interests of the public and the party seeking to seal the records. For most documents identified in the motions to seal, the documents are documents another party has already marked "confidential". Therefore, they will be sealed until and unless a party or nonparty successfully seeks to have them unsealed.

---

[9] These documents are Placer's Memorandum in Support of Motion for Summary Judgment; Placer's Statement of Undisputed Facts in Support of Motion for Summary Judgment; and The Declaration of Preston N. Carter in Support of Placer's Motion for Summary Judgment and exhibits thereto.
[10] These documents are Exhibits 1, 21, 23, and 26 to the Declaration of Christopher R. Hogle in Support of Bunker Hill Mining Corp.'s motion for summary judgment.
[11] These documents are Exhibits 5, 9, 10, 12, 16, 17, 20, 21, 22, 23, 26, and 30 to the Declaration of Christopher R. Hogle.

MEMORANDUM DECISION AND ORDER - 13

## V. CONCLUSION

Five motions are decided by this decision. BHMC's motion to amend its answers is granted. BHMC may add a statute of limitations affirmative defense. The motion was made in good faith under Rule 16 and meets the five factors under Rule 15.  Crescent's motion to amend is denied. Crescent cannot show good faith under Rule 16 and made no attempt to show its motion meets Rule 15's five factors. All three motions to seal are granted.

## VI. ORDER

1.    Docket 99, BHMC's Motion to Amend Answer to Crescent Mine, LLC's Second Amended Complaint (Dkt. 51) and Crescent Mines, LLC's Counterclaim (Dkt. 39) is **GRANTED.**

2.    Docket 117, Plaintiff Crescent Mine, LLC's Motion to Amend Second Amended Complaint is **DENIED.** As to the portion of this motion pertaining to the addition of two new Plaintiffs, it is denied with prejudice. As to the portion of this motion pertaining to the addition of a claim for punitive damages, it is denied without prejudice.

3.    All three pending Motions to Seal (Dkts. 109, 113, and 131) are **GRANTED.**

DATED: April 8, 2026



David C. Nye
U.S. District Court Judge