UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CRESCENT MINE, LLC,<br><br>              Plaintiff,<br><br>v.<br><br>BUNKER HILL MINING<br>CORPORATION; and PLACER MINING<br>CORPORATION (d/b/a New Bunker Hill<br>Mining Co.),<br><br>              Defendants. | Case No. 2:21-cv-00310-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

The parties filed three different summary judgment motions. The Court held oral argument on those motions.[1] There are two consolidated cases, 2:21-cv-00310-DCN and 2:21-cv-00209-DCN. This decision will first address the summary judgment motions filed by Bunker Hill Mining Corporation ("BHMC") and Placer Mining Corporation ("Placer"). Then, it will address Crescent Mine, LLC's ("Crescent") motion for summary judgment.

---

[1] This decision has been a long time in coming. However, it must be remembered that there are two consolidated cases, three separate summary judgment motions, each involving multiple memorandums, and each memorandum was significantly over the 30-page limit of the local rules. In addition, the parties filed thousands of pages of exhibits supporting or opposing summary judgment. Finally, the parties cited hundreds of cases supporting their position or opposing others' positions. The Court points this out, not to chastise any party or counsel, after all, proper requests were filed for permission to file over length briefs and permission was granted. Instead, it is pointed out only to show the volume of materials the court had to carefully review in ruling on the pending motions. This is a very complex and complicated situation with convoluted and extensive facts and law involved.

## II. BACKGROUND

The events at the center of this case began over three decades ago. The Bunker Hill Mine and the Crescent Mine are two adjacent mines located in northern Idaho. The mines and the Central Treatment Plant ("CTP") were once owned and operated by the same company, Bunker Hill Mining Company (U.S.) Inc. ("Original Bunker Hill"). The two mines are connected by a 3.7-mile tunnel referred to as the Y-U Crosscut that connects at the 3100 level of the Crescent Mine and the 23rd level of the Bunker Hill Mine. Original Bunker Hill declared bankruptcy in 1991.

Prior to Original Bunker Hill filing for bankruptcy, the Environmental Protection Agency ("EPA"), in 1983, placed the site of both mines on the EPA's National Priorities List. The EPA first conducted a remedial investigation and feasibility study of the Bunker Hill Mine in 1987 to address environmental contamination around the area, and the EPA adopted a remedial action that, in part, required water to remain in the Bunker Hill Mine rather than being discharged elsewhere. EPA issued a Record of Decision ("ROD") in 1992 for most of the area including the Bunker Hill Mine, the CTP, and most of the Crescent Mine. In 1994, the EPA assumed operation of the CTP and ordered the maintenance of the water level in the Bunker Hill Mine to remain around the 11 level.

Shortly after Original Bunker Hill filed for bankruptcy, both mines were shut down. This shutdown included the removal and sale of all electrical equipment and pumps. This resulted in the flooding of both mines with contaminated water referred to as Acid Mine Drainage ("AMD"). The Crescent Mine has no independent ability to pump water out of its lower levels, so the water level in both mines is controlled by pumping which takes

MEMORANDUM DECISION AND ORDER - 2

place in the Bunker Hills Mine. Water pumped out of the Bunker Hill Mine is typically diverted to the CTP before being discharged into the Coeur d'Alene River. Sometime between December 1991 and April 1992, Placer acquired the Bunker Hill Mine's property and mineral rights. Placer shut off the water line to the CTP and diverted all of the contaminated surface inflow into the Bunker Hill Mine's lower levels. Dkt. 116-2, ¶ 8. Pumping did not resume until December 1994. At that time, the water level in Bunker Hill Mine was near the 11 Level, and the water level has remained about the same ever since.

In April 2001, the EPA conducted another remedial investigation and feasibility study specifically related to managing AMD in the Bunker Hill Mine. The EPA ultimately decided to keep the AMD stored within the mine, even while considering alternatives like pumping it from the mine for treatment.[2] In 2017, the EPA also issued a Unilateral Administrative Order ("UAO") which required continued AMD storage in the Bunker Hill Mine at the level which it was currently being stored to facilitate upgrades to the CTP.

In 2014, Crescent acquired the Crescent Mine for $7.5 million in debt forgiveness. Dkt. 110-1, ¶ 11. This was through a bankruptcy receivership. Dkt. 51, ¶ 11. When Crescent acquired the Crescent Mine, it was aware that the mine was flooded.

On December 1, 2017, BHMC entered a Mining Lease with Option to Purchase Bunker Hill Mine from Placer. The following year, BHMC and the EPA entered into a Settlement Agreement whereby BHMC was required to maintain AMD levels. Those terms

---

[2] In 1998, the EPA even hired a consultant to examine the possibility of dewatering the Crescent Mine. That consultant raised several concerns with such a plan, including logistics of pumping with the lower pumps being removed and the additional burden on the CTP.

MEMORANDUM DECISION AND ORDER - 3

remained in place even after a 2021 amendment to the Settlement Agreement. In early 2021, BHMC attempted to purchase the Crescent Mine, but Crescent rejected the offer. In 2022, BHMC acquired the Bunker Hill Mine by exercising its option to purchase it from Placer. Shortly after its failed attempt to purchase the Crescent Mine, BHMC sent a demand letter to Crescent alleging Crescent was responsible for 27.45% of all costs of water treatment at the CTP, including those costs accrued in the past. Dkt. 116-2, ¶ 27.

In 2018, the EPA entered a Consent Decree with Placer and a Settlement Agreement with BHMC. On June 19, 2018, District Judge Edward J. Lodge entered an order adopting the Placer Consent Decree and the BHMC Settlement Agreement. That order acknowledged that BHMC's operation of the Bunker Hill Mine is "expressly subject to continued EPA approval and oversight." *U.S. v. Placer Mining Company, Inc., et al.,* 2:04-cv-00126-EJL, Dkt. 86, at 7 (June 19, 2018). The BHMC Settlement Agreement was amended in 2021.

On May 14, 2021, BHMC filed suit against Gold Finder Exploration LTD, Northstar Energy LLC, and United Silver Corporation to recoup some of its response costs. Case No: 2:21-cv-00209-DCN ("21-209"), Dkt. 1. On November 19, 2021, BHMC filed a Second Amended Complaint against Venzee Technologies Inc., Crescent Silver, LLC, Crescent Mine LLC, Syringa Exploration, Inc., and NorthStar Energy LLC again to recoup response costs. 21-209, Dkt. 16. That Second Amended Complaint is BHMC's operative complaint. BHMC brings four causes of action: three under CERCLA for cost recovery, contribution, and declaratory judgment and one common law claim for equitable indemnification, subrogation, or contribution.

MEMORANDUM DECISION AND ORDER - 4

On July 28, 2021, Crescent filed suit against BHMC, Placer, and Robert Hopper, Jr. Dkt. 1. On April 1, 2021, Crescent filed a Second Amended Complaint against BHMC and Placer. Dkt. 51. This is Crescent's operative complaint. Crescent brings six causes of action: two under CERCLA for cost recovery and declaratory judgment on future costs and four under Idaho state law for common law trespass, statutory trespass, nuisance and negligence. *Id.* Crescent also seeks injunctive relief requiring the Crescent Mine to be dewatered.

Placer filed a counterclaim against Crescent, with its Answer to Crescent's First Amended Complaint, on November 2, 2021. Dkt. 35. Placer refiled the First Amended Counterclaim on May 20, 2022, in response to Crescent's Second Amended Complaint. Dkt. 58. This is Placer's operative counterclaim. Placer brings two causes of action: both under CERCLA for contribution and declaratory judgment. *Id.*

The two cases were consolidated pursuant to a Stipulation. Dkt. 54. Each party—BHMC (Dkt. 112), Placer (Dkt. 108), and Crescent, Crescent Silver and Syringa (Dkt. 116) filed a Motion for Summary Judgment.

### III. LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show

that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation modified).

Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (citation modified). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. The Court cannot weigh the evidence and determine the truth of the matter but rather determines whether there is a genuine issue of fact for trial. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.* The non-moving party need only present evidence upon which "a reasonable juror drawing all inferences in favor of the [non-moving party] could return a verdict in [the non-moving party's] favor." *Id.* The non-moving party cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment but must set forth specific facts, supported by evidence, with reasonable particularity that preclude summary judgment. *Far Out Prods., v. Oskar,* 247 F.3d 986, 997

MEMORANDUM DECISION AND ORDER - 6

(9th Cir. 2001).

## IV. DISCUSSION

CERCLA sets forth a comprehensive scheme for the cleanup of hazardous waste sites and imposes liability for cleanup costs on the parties responsible for the release or potential release of hazardous substances into the environment. *Pakootas v. Teck Cominco Metals, Ltd.,* 452 F.3d 1066, 1072 (9th Cir. 2006). CERCLA generally imposes strict liability on owners and operators of facilities at which hazardous substances were disposed. *Carson Harbor Village, Ltd. v. Unocal Corp.,* 270 F.3d 863, 870 (9th Cir. 2001) (en banc); *3550 Stevens Creek Assocs. v. Barclays Bank,* 915 F.2d 1355, 1357 (9th Cir. 1990). That strict liability is joint and severable, meaning the party the EPA sues can be liable for all damages no matter who else has responsibility. However, CERCLA authorizes private parties to institute civil actions to recover the costs involved in the cleanup of hazardous wastes from those responsible for their creation. *Id.*; CERCLA § 107(a).[3] To establish a prima facie CERCLA claim for recovery of response costs, a plaintiff must show that: (1) there is a facility as defined in CERCLA § 101(9); (2) a release or threatened release of a hazardous substance from the facility has occurred; (3) such release or threatened release has caused the plaintiff to incur response costs that were necessary and consistent with the national contingency plan ("NCP"); and (4) the defendants are subject to liability under § 107(a). *City of Colton v. American Promotional Events, Inc.—West,* 614 F.3d 998, 1002-

---

[3] CERCLA is found at 42 U.S.C. §§ 9601–9675. Often, CERCLA is referred to as §§ 101–175. For consistency, the CERCLA provisions will be cited herein as CERCLA § 101–§ 175 or simply as § 101–§ 175.

03 (9th Cir. 2010) quoting *Carson Harbor Village,* 270 F.3d at 1265. This is an apportionment theory that allows a party to recover some, or all, of its costs incurred in the cleanup under § 107(a).

A CERCLA defendant may also seek contribution under CERCLA § 113(f))(1). This is a separate and distinct remedy from the right to recover costs under § 107(a). *See United States v. Atlantic Research Corp.,* 551 U.S. 128, 138 (2007). However, a party cannot bring a § 113 contribution claim against another party unless the suing party has already been sued under § 107(a). *See Whittaker Corp. v. United States,* 825 F.3d 1002, 1006 (9th Cir. 2016).

Finally, a party may seek injunctive relief regarding future costs or damages under CERCLA § 113(g)(2)(B).

Thus, under CERCLA, there are three possible causes of action: (1) recovery of response costs under § 107(a); contribution under § 113(f)(1); and (3) injunctive relief under § 113(g)(2)(B).

### A. Placer and BHMC Motions for Summary Judgment

Both Placer (Dkt. 108) and BHMC (Dkt. 112) seek summary judgment on Crescent's claims. They do so on multiple grounds[4] which will be discussed below as appropriate.

---

[4] Placer sets forth seven grounds in its Motion: (1) Crescent did not incur response costs; (2) EPA has established comprehensive remedial scheme for this Superfund site; (3) § 113(h) precludes state law claims because they challenge EPA mandated remedial actions; (4) § 122(e)(6) requires the Court to stay or dismiss State law claims because the President or EPA have not approved dewatering of the mines; (5) Crescent's State law claims are permanent torts barred by the applicable statute of limitations; (6) even if the State law

(continued)

MEMORANDUM DECISION AND ORDER - 8

### 1. *Response Costs under CERCLA § 107(a)*

Crescent's First Cause of Action is under § 107(a) to recover response costs. Dkt. 51, at 14. Both BHMC and Placer seek summary judgment against Crescent on this cause of action under element (3) of a prima facie CERCLA case for recovery of response costs. Dkt. 112-1, at 4; Dkt. 110, at 20. That element requires that plaintiffs "incur" response costs that were necessary and consistent with the NCP prior to filing suit for reimbursement. BHMC and Placer argue Crescent cannot meet this element because it did not incur response costs prior to filing suit.[5] Crescent argues against summary judgment; however, in doing so it says nothing about the costs identified in its Second Amended Complaint and those costs are deemed abandoned.[6] *Celotex*, 477 U.S. at 324 ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"). Instead, Crescent claims there are two invoices addressed to it showing it incurred costs and further, that it incurred legal

claims are continuing torts, Crescent's damages are based on the condition of Crescent Mine in 1991; and (7) State law claims are precluded because the two mines were under joint ownership when the cause of action accrued. Dkt. 110.

BHMC outlines four grounds for relief in its Motion: (1) Crescent did not incur response costs; (2) it owes Crescent no duty to dewater the Crescent Mine; (3) Crescent's State law claims conflict with EPA's jurisdiction over the mines; and (4) the State law claims are permanent torts barred by the statute of limitations. Dkt. 112-1.

[5] Both Defendants made this same argument in their respective Motions to Dismiss and the Court granted those motions because the operative Complaint (Dkt. 24) at the time only vaguely alleged that Crescent incurred response costs. The current operative Second Amended Complaint (Dkt. 51) now alleges that Crescent incurred costs relating to retaining an environmental consulting firm and providing access via the Hooper Tunnel to the Ellis Shaft, among other expenses. Dkt. 51, ¶¶ 73–76.

[6] Crescent also did not provide any documentation in support of the costs identified in the Second Amended Complaint.

MEMORANDUM DECISION AND ORDER - 9

obligations to pay other costs. Dkt. 133, at 5. Thus, this argument turns on whether Crescent incurred costs prior to filing suit.

CERCLA does not define "incur." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.,* 710 F.3d 946, 961 (9th Cir. 2013) ("the statute does not define 'incur,' and there is no controlling authority on the term in the CERCLA context"). Courts have consistently defined "incur" as actual payment by plaintiff of costs before filing suit. *See, e.g., Roosevelt Irrigation District v. Salt River Project Agricultural Improvement and Power District,* 222 F. Supp. 3d 757, 765 (D. Ar. 2016). Under this definition, there is no evidence that Crescent actually paid any costs before filing suit. There are no cancelled checks, no receipts, no ledgers or bank statements showing these amounts were deducted from Crescent's bank accounts. Instead, the evidence all supports the claim that Crescent Silver paid all costs incurred before suit was filed.

That said, some courts have also held that "incur" can include situations where plaintiff assumed a non-contingent legal obligation to reimburse a third party prior to plaintiff's filing suit. *Id.; Wilson Road Development Corp. v. Fronabarger Concreters, Inc.,* 971 F. Supp. 2d 896, 910 (E.D. Mo. 2013). Crescent claims there are two invoices showing it assumed a non-contingent legal obligation to pay response costs.[7] However, Crescent ignores the undisputed fact that both invoices were for rental of equipment long *after* Crescent filed suit. The first is dated August 8, 2023, and the second is dated

---

[7] According to Crescent's Response, those two invoices total about $3,070. Dkt. 133 at 5–6: $80 for rented equipment to sample water and $2,900 for supplies to rehabilitate the Hooper Tunnel to prepare for sampling the water. However, the actual invoices cited by Crescent are: (1) Crescent Mine, PO Box 268, Kellogg, ID for $39, and (2) Crescent Mine, PO Box  268, Kellogg, ID for $39. These total $78. Dkt. 116-45, Ex. 2 at 64–65.

MEMORANDUM DECISION AND ORDER - 10

November 16, 2023. Both dates are long after the initial Complaint was filed on August 28, 2021, and even after the operative Second Amended Complaint was filed on April 1, 2022. That defeats the use of these two invoices to show Crescent incurred response costs *prior* to initiating suit for past costs.

CERCLA is a remedial, backwards-looking statute. *Eagle Star Rock Products LLC v. PCC Structural, Inc.,* 756 F. Supp. 3d 1062, 1088 (D. Or. 2024). The Ninth Circuit has made it clear that a plaintiff cannot rely on costs incurred after filing suit to meet the element that costs must be expended. The Ninth Circuit stated:

> Under CERCLA's scheme for private action, response costs may not be recovered when there has been no commitment of resources for meeting those costs. Section 9607(a)(4)(B) permits an action for response costs 'incurred'—not "to be incurred."
>
> …
>
> These sections envision that, before suing, CERCLA plaintiffs will spend money responding to an environmental hazard. They can then go to court and obtain reimbursement for their initial outlays, as well as a declaration that the responsible party will have continuing liability for the cost of finishing the job.
>
> This system strikes a balance between a number of considerations. By requiring a plaintiff to take some positive action before coming into court, CERCLA ensures that the dispute will be ripe for judicial review.

*In re Dant & Russell, Inc.*, 951 F.2d 246, 249–50 (9th Cir. 1991). Crescent cannot rely on the proffered invoices for its claim that it incurred costs prior to filing suit.

Alternatively, even if Crescent is allowed to rely on these invoices, it still cannot get past summary judgment on the issue of response costs. Crescent relies on *Cal. ex Cal Dep't of Toxic Substances Control v. Neville Chem. Co.,* 358 F.3d 661, 668 n.4 (9th Cir. 2004),

for the proposition that once a plaintiff has incurred $1 in costs it has a claim for response costs. Dkt. 133, at 5. However, the footnote relied upon by Crescent actually states, "As soon as the Department expended its first dollar, it could have sued Neville for this dollar and sought a declaratory judgment of Neville's liability for future response costs." Nothing in that language suggests that the incurrence of some costs opens the door for a suit to recover all costs no matter who incurred the costs and when. Likewise, Crescent cites *Roosevelt* to suggest "[P]laintiffs may 'incur' costs even if another entity actually pays for those costs" because "the relevant inquiry is 'who assumed a legal obligation to pay.'" 222 F. Supp. 3d at 765 (quoting *Wilson*, 971 F. Supp. 2d at 910). But if that were true, such would result in double recovery because the plaintiff could recover costs it never paid and the actual payor could also recover those costs. What *Wilson* actually said is:

> The plaintiffs in *Trimble,* on the other hand, neither paid clean-up costs prior to filing suit under CERCLA, nor incurred a definite legal obligation to do so. Instead, the attorneys of the *Trimble* plaintiffs paid for all expenditures. Plaintiffs' obligation to reimburse their attorneys was contingent upon the success of their claims. This was insufficient to satisfy the third prong of CERCLA, requiring plaintiffs to incur costs prior to filing suit: 'the mere possibility, even the certainty, that an obligation to pay will arise in the future does not establish that a cost has been incurred, but rather establishes that a cost may be incurred, or will be incurred.'

*Wilson*, 971 F. Supp. 2d at 910

Likewise, in *Roosevelt,* in answering the question "who assumed a legal obligation to pay," the court stated it was undisputed that Roosevelt's attorneys paid the response costs at issue and that there was insufficient evidence to show Roosevelt incurred a legal obligation to reimburse the attorneys because they had a contingency fee arrangement. 222 F. Supp. 3d at 765.

MEMORANDUM DECISION AND ORDER - 12

Here, the mere existence of two invoices stating "Crescent" is not enough to show Crescent "incurred" some costs. First, it is not at all clear that those invoices are even in Crescent's name. The invoices Crescent points to are from The Rental Store and addressed to Crescent or Crescent Mines. They were mailed to P.O. Box 268, which is the same address the invoices for Crescent Silver were mailed to.[8] There is no evidence of who paid those invoices. Second, Crescent's own expert testified that Crescent Silver, not Crescent, paid all response costs. Dkt. 112-25, at 45 (176:8-17). In fact, there is no evidence that Crescent could even pay invoices. It had no employees and there is no evidence that Crescent committed resources to pay those invoices. Dkt. 138, at 1.

The lack of evidence that Crescent incurred any costs prior to suit entitles Placer and BHMC to summary judgment on Crescent's claim for response costs under § 107(a). There is simply no evidence that element three has been met. Accordingly, summary judgment is granted in favor of BHMC and Placer on Crescent's first cause of action for response costs.

## 2. *Declaratory Judgment under CERCLA § 113(g)(2)(B)*

Crescent's Second Cause of Action is for a declaratory judgment under § 113(g)(2)(B). BHMC and Placer seek summary judgment on this cause of action because Crescent did not incur costs prior to filing suit. The Ninth Circuit has recognized that there is a split in the circuits as to whether a CERCLA plaintiff's failure to establish liability for its past costs necessarily dooms its bid to obtain a declaratory judgment as to liability for

---

[8] Those few invoices may be using a shorthand version of Crescent Silver's name along with Crescent Silver's address.

MEMORANDUM DECISION AND ORDER - 13

future costs. *See City of Colton,* 614 F.3d at 1008 . However, the Ninth Circuit made its choice regarding that circuit split, binding this Court to follow the rule of law imposed by the Ninth Circuit. *Id.*

The Ninth Circuit held that CERCLA's purposes are better served by allowing a plaintiff to seek a declaratory judgment as to future liability only after plaintiff has established past liability in its initial cost-recovery action. *Id.* Thus, under the Ninth Circuit's rule of law, an action for declaratory relief under CERCLA § 113(g)(2)(B) fails unless an action for cost compensation succeeds under § 107(a). *See United States v. City of San Diego,* 2025 WL 2481426 (S.D. Cal. 2025) ("[A] plaintiff is entitled to a declaratory judgment on present liability that will be binding on future cost-recovery actions only if it establishes liability for the response costs sought in the initial cost-recovery action.") (citation modified).

The Court granted BHMC and Placer summary judgment on Crescent's response costs. It must, therefore, also grant summary judgment to them on Crescent's declaratory judgment action. Crescent's CERCLA claims are defeated.

### 3. Jurisdiction and Authorization under CERCLA § 113(h) and § 122(e)(6)

BHMC and Placer also argue the language of specific CERCLA statutes mean this court has no jurisdiction over Crescent's CRCLA case and that Crescent cannot proceed with a suit seeking to dewater Crescent Mine without EPA approval.[9] The two CERCLA statutes in question here are CERCLA § 113(h) and CERCLA § 122(e)(6).

---

[9] BHMC and Placer appear to be focusing on Crescent's third point under its prayer for relief in the Second Amended Complaint for abatement of state torts. Dkt. 51, at 29–30.

MEMORANDUM DECISION AND ORDER - 14

Under CERCLA 113(h), "No Federal court shall have jurisdiction under Federal law . . . to review any challenges to removal or remedial action" that the EPA has ordered to address a hazardous substance release. The purpose of this section is to protect "the execution of a CERCLA plan *during its pendency* from lawsuits that might interfere with the expeditious cleanup effort." *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 329 (9th Cir. 1995) (emphasis in original). Where an EPA plan is in place, even an attempt to improve upon a CERCLA cleanup because a party wants more is considered inappropriate interference. *Pakootas v. Teck Cominco Metals, Ltd.*, 646 F.3d 1214, 1220 (9th Cir. 2011). Additionally, penalties exacted before a cleanup is completed that may interfere with the ability to perform a cleanup can constitute a challenge to remedial action.[10] *Id.* at 1222.

BHMC and Placer argue extensively that the Court is divested of jurisdiction in this case because the EPA has made several orders related to the dewatering of the Bunker Hill Mine, the levels at which AMD must be maintained within the Mine, and the importance of not overwhelming the CTP. Thus, BHMC and Placer argue Crescent's requested court order requiring the dewatering of the Bunker Hill Mine down to a level which would dewater the Crescent Mine and an award of over $27 million in damages[11] would constitute

---

[10] Crescent argued *Pakootas* and *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1250 (10th Cir. 2006)—which Placer relied on to assert monetary damages—constitute a challenge because they interfere with the EPA's ability to enforce a penalty.  However, these two cases are inapplicable because neither involved a private party state law tort claim, but rather citizen suits attempting to enforce or expand upon EPA agreements.

[11] Bunker Hill has agreed to pay the EPA remediation costs of $20 million to address the release of AMD

(continued)

MEMORANDUM DECISION AND ORDER - 15

the exact type of challenge to the EPA's existing orders that is precluded by § 113(h).

Crescent counters the EPA's orders only require water levels in the Bunker Hill Mine to remain below level 11, but there is nothing in the orders which say the AMD cannot be pumped lower. While it is true Bunker Hill must control mine flows to the CTP during upgrades and high flow periods, Crescent indicates recent upgrades to the CTP completed in 2021 would allow for the dewatering of the Mine without violating the EPA's orders that the CTP cannot be overwhelmed. Thus, Crescent contends there is no challenge to the already-implemented EPA remedy, but rather its sought-after remedy would work in harmony with the EPA order. This argument misses the point. It is the EPA, not this Court, that should be determining whether Crescent's injunctive relief would work in harmony with, or opposed to, the plan adopted by the EPA.

Additionally, Crescent argues its request for money damages is not a challenge to the EPA's orders because there is no support for the assertion that "once settling with EPA for certain contamination and costs, [a party] is insulated from all tort liability whatsoever, including tort claims for monetary damages against the party that involve other contamination, damages, and tortious conduct not at issue in the EPA settlement." Dkt. 133, at 22. Specifically, Crescent points out the EPA settled with Bunker Hill for remediation costs related to AMD release into the surrounding area, not into Crescent Mine, and that settlement does not insulate it from liability for damages caused directly to Crescent Mine.

---

into the area surrounding the Bunker Hill Mine. Bunker Hill argues an award of damages to Crescent Mine could result in Bunker Hill's inability to operate moving forward, ensuring the EPA does not get its remediation costs. If that were to occur, the EPA's ability to enforce the settlement agreement between the parties would be hindered.

However, there is no way to read "the surrounding area" as not including Crescent Mine.

Crescent's arguments miss the point. The EPA has carefully crafted the development of a single EPA-led cleanup effort for this entire site. That is the purpose of CERCLA. *Atl. Richfield Co. v. Christian,* 590 U.S. 1, 20 (2020). The very language of the statute precludes this Court's jurisdiction: No potentially responsible party may undertake any remedial action at the facility unless it has been authorized by the President. CERCLA § 122(e)(6). A court order requiring the draining of the Bunker Hill Mine below the level agreed to by the EPA and Placer and BHMC would be a remedial action without the required Presidential authorization. This forum is not the appropriate forum for such a claim.

Under CERCLA § 122(e)(6), a potentially responsible party for a hazardous material contamination cannot undertake any remedial action once a remedial investigation and feasibility study has been initiated, unless such remedial action has been authorized by the EPA. So the only appropriate action in this case is a stay pending EPA approval or dismissal of the case without prejudice until EPA approval is sought and obtained. *See Atlantic Richfield Co.*, 590 U.S. at 26 (Alito, J. concurring in part) ("the Montana Supreme Court has two options on remand: (1) enter a stay to allow the landowners to seek EPA approval or (2) enter judgment against the landowners on their restoration damages claim without prejudice to their ability to refile if they obtain EPA approval."). Summary judgment is granted to BHMC and Placer without prejudice on the issue of injunctive relief from this Court. That relief must be addressed by the EPA.

MEMORANDUM DECISION AND ORDER - 17

### 4.   State Law Claims

Crescent's remaining causes of action are for damages based on state law claims of common law trespass, trespass, nuisance, and negligence. BHMC and Placer raise several issues on summary judgment as to these claims.

a.   Statute of Limitations

At the outset, BHMC and Placer argue Crescent's state law damage claims are barred by the respective statutes of limitation. Under Idaho law, the statute of limitations for trespass is three years[12]; the statute of limitations for nuisance and for negligence is four years.[13]

BHMC and Placer's statute of limitations argument requires a determination of when the causes of action accrued. When a tort claim accrues under Idaho law depends on whether it is temporary or permanent. *Idaho v. Hanna Mining Co.*, 699 F. Supp. 827, 834 (D. Idaho 1987). If permanent, the cause of action accrues when the tort was created or occurred. *See Id.* at 834 (quoting *State of Idaho v. Bunker Hill Company,* 600 F. Supp. 797 (D. Idaho 1985)). If temporary and continuing in nature, the cause of action does not accrue, and an action may be brought at any time to recover damages occurring within the previous limitation period. *Id.*

Thus, in a case like this, the Court can grant Defendants' Motion for Summary Judgment on all injuries and damages prior to four years preceding the filing of the original

---

[12] Idaho Code § 5-218.
[13] *Idaho Gold Dredging Corp. v. Boise Payette Lumber Co.*, 22 P.2d 147 n.12 (Idaho 1933); *Stapleton v. Jack Cushman Drilling and Pump Co. Inc.,* 291 P.3d 418, 424 (Idaho 2012)

MEMORANDUM DECISION AND ORDER - 18

complaint. This is because if the tort is permanent, the cause of action accrued in the 1990s when the pumps were removed and the statute of limitations expired long before the Complaint was filed. Alternatively, if the tort is temporary and continuing in nature, the damages and injuries can be recovered for the four years immediately preceding the filing of the complaint but not beyond. The original complaint was filed on August 28, 2021, so under permanent tort law, all damages are precluded since the statute of limitations accrued in the 1990s and suit was filed in 2021. Under continuing or temporary tort law, only damages occurring prior to August 28, 2017, are precluded. That means that under either theory, all damages occurring from the date the pumps were removed up until August 28, 2017, are outside the statute of limitations. The Court must then decide whether the tort here is permanent or temporary to decide if damages after August 28, 2017, can be recovered.

Unfortunately, Idaho law is a bit murky on the whole permanent or continuing tort issue. For example, the case cited by BHMC and Placer, *Curtis v. Firth,* 850 P.2d 749 (Idaho 1993), which involved the tort of intentional infliction of mental distress, recognized that the Idaho Supreme Court had used the words "continuing" and "tort" in three separate and very different contexts. The first context was set out in *Farber v. State,* 630 P.2d 685 (Idaho 1981). In *Farber,* the State was building a road project and the Farbers were landowners who sued for the negligent design, construction, and planning of that project. There, the Court held that the tort and damages were ongoing throughout the project such that the Farbers did not have to file their Notice of Tort Claim until the project was completed. Even though that case arose in the context of a notice of tort claims, the Court

MEMORANDUM DECISION AND ORDER - 19

acknowledged that a tort should be analyzed for the purposes of time limitations according to whether it is simply one complete act with ensuing damages, or whether it consists of a series of continuous activities. The *Farber* court held that the tort was continuing throughout the project.

Second was *Woodland v. Lyon,* 298 P.2d 380 (Idaho 1956), a case that discussed a continuing tort in the context of a water right. In *Woodland,* the defendant obstructed a stream bed and prevented water from flowing onto plaintiff's property for four consecutive years. Plaintiffs filed suit and obtained a jury verdict. On appeal, the Idaho Supreme Court held that the blockage of the water was not a single act, but a continuing one so that the Plaintiff could sue for the entire damages even though the lawsuit was filed more than four years after the blockage was put into place.[14] The *Curtis* court stated "It was clear that *Woodland* actually referred to *continuing damages* resulting from one tortious act, rather than *continuing acts.*" *Curtis,* 850 P.2d, at 754 (emphasis in original).

Third was *Streib v. Veigel,* 706 P.2d 63 (Idaho 1985), a case the *Curtis* court said refers to a situation where an act or acts occur but no damages arise for a period of time. In *Streib*, the Court held that there must be "some damage" before a cause of action can be deemed to accrue for purposes of the statute of limitations. Again, the Court referred to this situation as a continuing tort. *Curtis,* 850 P.2d, at 754.

Summarizing the three distinct types of continuing torts in *Farber, Woodland,* and *Streib,* the Idaho Supreme Court held a court must first determine which of the three types

---

[14] The applicable statute of limitations was three years for trespass and four years for any other tort at that time.

applies because that, in turn, determines when the cause of action accrued for purposes of the statute of limitations.

The present case is most like *Woodland.* There was a single act that allowed water to flow into, and remain in, the Crescent Mine. That act was the removal of the pumps in the 1990s. It allowed the buildup of water in the mine for decades. Thus, this is a continuing damage resulting from one tortious act type of case. The *Woodland* court expressly held the plaintiff may recover for all injuries occurring within the four years immediately prior to his filing of the complaint even though the obstruction occurred more than four years before the filing.

Thus, under *Woodland,* Crescent can sue for trespass for the three years immediately preceding August 28, 2021. Crescent can also sue for nuisance and negligence only for the four years immediately preceding August 28, 2021. BHMC and Placer's motions for summary judgment are granted in part as to Crescent's state law tort claims on the basis of the statute of limitations. Crescent cannot sue for any damages or injuries occurring prior to August 28, 2017. There is a factual question that defeats summary judgment for any damages or injuries occurring after that date.

Importantly, for damage purposes, tort injuries can also be either permanent or temporary. To be temporary, it must be abatable, which means it "can be removed without unreasonable hardship or expense." *Skokomish Indian Tribe v. United States*, 410 F.3d 506, 518 (9th Cir. 2005). While Placer concedes that abatability is usually a question of fact for trial (Dkt. 110 at 14), it argues the unreasonableness of abatement is clear here in its cost, time to complete, and competition with EPA orders. Crescent Mine counters this argument

MEMORANDUM DECISION AND ORDER - 21

with multiple ways in which abatement could be reasonable. The Court need not reach the merits of these arguments today, as it agrees with Placer's concession that abatability is a question of fact for trial. The parties clearly disagree as to whether dewatering the mines is reasonable or even feasible, and the resolution of that disagreement is squarely within the purview of a factfinder. As such, Placer and Bunker Hill's Motions for Summary Judgment as related to whether damages are permanent or temporary are GRANTED in PART and DENIED in PART as outlined above.

b.  Joint Ownership

BHMC and Placer argue Crescent cannot prevail on any of its state law claims because the two mines were under joint ownership when the pumps were removed. This is because trespass, nuisance, and negligence require an invasion of someone else's property rights. At the time the pumps were removed from the Bunker Hill Mine, one entity owned both mines. Additionally, at the time the water initially flooded into the Crescent Mine, the mine was still owned by Original Bunker Hills, the same bankrupt entity that owned Bunker Hill Mine. However, BHMC and Placer have the same issue here that they have with the statute of limitations. Depending on which type of tort exists, the accrual of the tort actions may be as a single act—when the pumps were removed—or be continuous over the years—when the contaminated water remained in Crescent Mine. Summary Judgment must be denied on this issue due to the factual dispute.

The Court will now address Crescent Mine's four causes of action under state law

MEMORANDUM DECISION AND ORDER - 22

individually as they relate to BHMC.[15]

   c.  <u>Common Law Trespass against BHMC</u>

To establish a claim for common law trespass, Crescent must prove: "(1) an invasion, (2) which interferes with the right of exclusive possession of the land, and (3) which is a direct result of some act committed by the defendant." *Thomas v. Thomas*, 2015 WL 1467207, at *7 (D. Idaho 2015) (citation modified). BHMC argues, as it does for many of these state law claims, that it did not trespass because it did not own the Bunker Hill Mine until 2022, so it cannot be liable for the trespass which occurred in the 1990s.

BHMC goes one step farther when addressing this common law trespass claim and argues it never acquired a legal interest in the water in the Crescent Mine as all water under the surface of the ground is the property of the state of Idaho, so it cannot be responsible for any continuing encroachment.[16]

Crescent Mine counters by referencing *Goldingay v. Progressive Casualty Insurance Co.*, 306 F. Supp. 3d 1259 (D. Or. 2018), in which that district court held a defendant liable for a petroleum leak which was caused by the previous owners of the property. Crescent Mine points out that defendant presumably did not have an ownership interest in the petroleum which caused the contamination, but that was not a deciding factor of liability. The court in *Goldingay*, rather, imposed liability where the defendant knew or

---

[15] Placer almost exclusively relied on its arguments related to continuing v. permanent torts and the applicable statutes of limitation in challenging Crescent Mine's state law claims. Because the Court has already held those arguments fail on summary judgment, the Court will focus exclusively on Bunker Hill's individual challenges to Crescent Mine's four causes of action under state law.

[16] This argument ignores the fact that the contamination is not the presence of water but the presence of AMD, which comes from the minerals or ground, not from the water.

MEMORANDUM DECISION AND ORDER - 23

should have known the contamination was causing a trespass or nuisance and failed to abate it. *Id.* at 1266.

Idaho law recognizes a continuing tort doctrine for trespass. *Axelrod as Trustee of David W. Axelrod Family Trust v. Reid Limited Partnership,* 551 P.3d 777, 790 (Idaho 2024). However, Crescent has standing to assert trespass, continuing or otherwise, only during its period of ownership. *See, Id.* Its period of ownership began in 2014, so any trespass occurring before 2014 cannot be a part of this lawsuit. Additionally, under a continuing trespass theory, each day that water flows into Crescent Mine from Bunker Hills Mine is considered a new accrual of a cause of action. Since the statute of limitations for trespass is three years, Crescent can only recover for trespass occurring in the three years immediately prior to the filing of their Complaint. Their original Complaint was filed on July 28, 2021, so any trespass occurring prior to July 28, 2018, is time barred.

There is some evidence that water has flowed between Bunker Hills mine and Crescent mine on a repetitious basis. If the jury agrees with that fact, Crescent may be able to recover for trespass for the three years immediately prior to the filing of its complaint. Summary judgment on this claim is, therefore, DENIED. A jury will have to decide.

d. Statutory Trespass

Similar to common law trespass, civil trespass occurs when "[a] person commits a civil trespass with damage when he enters or remains on the real property of another without permission, knowing or with reason to know that his presence is not permitted, and causes damage to real or personal property in excess of one thousand dollars." Idaho Code § 6-202(2)(b). BHMC again asserts it never entered or remained upon Crescent Mine, so it

MEMORANDUM DECISION AND ORDER - 24

never committed statutory trespass. Crescent argues BHMC is still liable for the failure to abate the nuisance and for any continuing encroachments of water—anticipating when Bunker Hill chooses to stop pumping water and the accumulated AMD equalizes between the mines.

The Court does not agree with BHMC that it has never remained upon Crescent Mine. The AMD which originated in Bunker Hill Mine three decades ago remains in Crescent Mine. BHMC is the current owner of the Bunker Hill Mine, and therefore remains "on" Crescent Mine. Thus, Bunker Hill's Motion as it relates to statutory trespass is DENIED.

e. Nuisance

A nuisance is "anything which is injurious to health . . . offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." Idaho Code § 52-101. Typically, a plaintiff must prove that a defendant has engaged in a course of conduct which causes such a nuisance. *Payne v. Skaar*, 900 P.2d 1352, 1357 n.2 (Idaho 1995) (quoting IDJI 490). Additionally, Idaho Code § 52-109 indicates, "Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of such property, created by a former owner, is liable therefor in the same manner as the one who first created it," but this does not apply to damages previously inflicted by a nuisance. *See Brose v. Twin Falls Land & Water Co.*, 133 P. 673, 676 (Idaho 1913).

BHMC continually argues it never engaged in any conduct which caused a nuisance here, and any damages inflicted by the flooding of the Crescent Mine were previously

MEMORANDUM DECISION AND ORDER - 25

inflicted such that it cannot be liable. However, the water remains within Crescent Mine, and the damage is ongoing. Any damages Crescent Mine is suffering are ongoing, and BHMC cannot escape liability by simply stating the damages first occurred in the past, so they are all "previously inflicted." Such a holding would render Idaho Code § 52-109 useless. Bunker Hill's Motion as it relates to nuisance is DENIED.

## B. Crescent's Motion for Summary Judgment

### 1. Own Claims for Response Costs and Declaratory Judgment under CERCLA

Crescent seeks summary judgment in its favor on its own claim for cost recovery under § 107(a). This is denied because, as discussed above, Crescent has not provided any evidence that it incurred costs prior to filing its original Complaint. The claim for declaratory judgment fails for the same reason—again, as discussed above.

### 2. Own Claim for Trespass – common law and statutory

Crescent seeks summary judgment in its favor on its own claims for common law trespass and statutory trespass. This is denied because, as discussed above, there is a factual dispute as to whether there is a permanent trespass or a temporary trespass.

### 3. BHMC and Placer's CERCLA Claims

BHMC brings claims against the Crescent Parties under CERCLA for response costs (§ 107(a)) and contribution (§ 113(f)). Placer brings a counterclaim against Crescent for contribution (§ 113(f)). The Crescent Parties argue that these claims fail as a matter of law. Dkt.116-1.

#### a. BHMC's Response Costs under CERCLA § 107(a)

BHMC has brought a claim against the Crescent Parties under CERCLA § 107(a)

MEMORANDUM DECISION AND ORDER - 26

for response costs. However, BHMC acknowledges that its past response costs are costs owed to the EPA pursuant to the Administrative Settlement Agreement issued by the EPA pursuant to CERCLA § 106. The Crescent Parties argue a private party cannot obtain response costs under § 107(a) when those costs are incurred due to a settlement agreement. *See Whittaker Corp. v. United States,* 825 F.3d 1002, 1009 (9th Cir. 2016). But, Crescent also acknowledges that a private party can seek contribution under § 113(f) when costs are incurred due to a settlement agreement. Dkt. 116-1 at 34. BHMC states that it will abandon the § 107(a) claim for response costs and only pursue its § 113(f) claim for contribution against all Crescent Parties. Dkt. 129, at 42.

Placer has not brought a response costs claim against Crescent Mine under § 107(a). Therefore, there are no claims for response costs left in this case. CERCLA § 107(a) is no longer part of this consolidated lawsuit.

b.  Contribution Claims under CERCLA § 113(f)

BRMC seeks contribution from the Crescent Parties under CERCLA § 113(f). Placer seeks contribution only from Crescent under § 113(f).  The purpose of a contribution claim is for the defendant to avoid "joint and several liability" once liability for recovery of response costs is established. *Carson  Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 871 (9th Cir. 2001). The defendant does this by establishing that it caused only a divisible portion of the harm (apportionment) or by seeking contribution from other potentially responsible parties ("PRPs") under § 113(f). *Id.* "The contribution provision of CERCLA aims to avoid a variety of scenarios by which a comparatively innocent PRP might be on the hook for the entirety of a large cleanup bill." *Id.* Contribution, also known

MEMORANDUM DECISION AND ORDER - 27

as equitable allocation, is available even when apportionment of liability is not. *Burlington N. & Santa Fe Ry. Co. v. United States,* 556 U.S. 599, 615 n.9 (2009). This means that a defendant in a § 107(a) action "could blunt any inequitable distribution of costs by filing a § 113(f) counterclaim." *Atl. Research Corp.,* 551 U.S. at 140.

The Court has determined Crescent cannot recover response costs because it did not incur such costs before filing suit. Without liability for recovery of response costs, the purpose of contribution is nonexistent. Therefore, the Court finds that Crescent's motion for summary judgment on its contribution claims under § 113(f) is moot because Crescent cannot obtain recovery costs from Placer or BHMC in this consolidated lawsuit.

c.  BHMC's Claim for Indemnity, Subrogation, and Contribution

BHMC's Second Amended Complaint includes a Fourth Cause of Action for Indemnity, Subrogation, and Contribution. 21-209, Dkt. 16. The claim is against the Crescent Parties and is an attempt to recover for payments BHMC made to the EPA for water that discharges from the Crescent Mine into the Bunker Hill Mine that requires treatment. *Id*. at ¶ 104-05. The Crescent Parties argue this claim is superfluous to BHMC's claim for contribution under CERCLA § 113 and should be dismissed.

The Crescent Parties rely on a Sixth Circuit case for their position. In *Regional Airport Authority of Louisville v. LFG*, the Sixth Circuit recognized that Kentucky follows the traditional rule that equitable relief is not available where there exists an adequate remedy at law. 460 F.3d 697, 711 (6th Cir. 2006). Based on that traditional rule, the Sixth Circuit held that CERCLA precluded the plaintiff from seeking state law equitable claims of indemnification. *Id*. Idaho follows this same traditional rule. *Worthington v. Crazy*

MEMORANDUM DECISION AND ORDER - 28

*Thunder,* 541 P.3d 694, 700 (Idaho 2024) (quoting *Hull v. Giesler,* 331 P.3d 507, 518 (Idaho 2014) ("Equitable remedies are not available where the aggrieved party has a plain, speedy, adequate, and complete remedy at law.")).

BHMC argues that its equitable claims for indemnity, subrogation and contribution are dismissible only if the Court does not dismiss its CERCLA § 113(f) contribution claims. The Court has not dismissed BHMC's § 113(f) claim so BHMC has an adequate remedy under CERCLA. Crescent is granted summary judgment on BHMC's Fourth Cause of Action.

## V. CONCLUSION

BHMC and Placer are entitled to summary judgment on both of Crescent's CERCLA causes of action. Additionally, BHMC and Placer are entitled to partial summary judgment on Crescent's state law causes of action for common law trespass, trespass, nuisance, and negligence. On Crescent's state law claims, BHMC and Crescent are granted summary judgment on all damages occurring prior to their respective statute of limitations (August 28, 2017, for trespass and August 28, 2018 for all other torts).

Crescent is not entitled to summary judgment except on the limited issue of BHMC's claims for indemnity, subrogation and contribution. This is because BHMC's § 113(f) contribution claim remains viable.

## ORDER

1. Summary Judgment is GRANTED to BHMC and Placer on Crescent's CERCLA causes of action – First Cause of Action, Cost Recovery under § 107(a) and Second Cause of Action, Declaratory Judgment under § 113(g)(2)(B).

MEMORANDUM DECISION AND ORDER - 29

2.  Summary Judgment is GRANTED, in part, to BHMC and Placer on Crescent's state law causes of action for common law trespass and statutory trespass on all damages occurring prior to August 28, 2018. Summary Judgment is DENIED, in part, to BHMC and Placer on Crescent's state law causes of action for common law trespass and statutory trespass on all damages occurring after August 28, 2018, because there are disputed issues of material fact.

3.  Summary Judgment is GRANTED, in part, to BHMC and Placer on Crescent's state law causes of action for Nuisance and Negligence on all damages occurring prior to August 28, 2017. Summary Judgment is DENIED, in part, to BHMC and Placer on Crescent's state law causes of action for Nuisance and Negligence on all damages occurring after August 28, 2017, because there are disputed issues of material fact.

4.  Summary Judgment is DENIED to Crescent on its own claims for response costs and declaratory judgment under CERCLA.

5.  Summary Judgment is DENIED to Crescent on its own claims for common law and statutory trespass.

6.  Summary Judgment is DENIED to Crescent on BHMC's § 107(a) response costs as moot. BJMC's § 107(a) response cost claim has been abandoned.

7.  Summary Judgment is DENIED to Crescent on the § 113(f) contribution claims by BHMC and Placer.

8.  Summary Judgment is GRANTED to Crescent on BHMC's claims for indemnity, subrogation, and contribution because BHMC's § 113(f) contribution claim remains

MEMORANDUM DECISION AND ORDER - 30

in the case making BHMC's claims for indemnity, subrogation, and contribution under the common law moot.

DATED: June 24, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 31